UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| | Criminal No. 1:20-MJ-00068 (DAR) |
| | : |
| **THEODORE DOUGLAS** | : |

**DEFENDANT'S MOTION FOR DETENTION HEARING AND OPPOSITION TO THE GOVERNMENT'S ORAL MOTION TO CONTINUE THE PRELIMINARY HEARING**

Theodore Douglas, by and through his attorney, respectfully requests an immediate detention hearing.

**Procedural History**

On April 23, 2020, Mr. Douglas appeared for an initial appearance on a criminal complaint for Unlawful Possession of a Firearm under 18 U.S.C. 922 (g). The defense challenged the probable cause finding that Mr. Douglas had knowledge of the firearm in the backpack that was found in his possession. The government argued that Mr. Douglas did have knowledge and the Court determined that there was probable cause established in the Statement of Facts. Mr. Douglas requested a preliminary hearing in the future and also a detention hearing. All parties announced that they were ready for a detention hearing. The Court, however, expressed a preference for a consolidated preliminary hearing and detention hearing. In doing so, it set a status hearing for April 24, 2020 in order to determine when a preliminary hearing would be appropriate.

**Argument**

I. **Mr. Douglas' detention hearing must go forward within three days of his arrest**
.

Mr. Douglas has a statutory right to a detention hearing within three days of his initial appearance.  18 U.S.C. § 3142 (f) (2).   He has an additional right to a preliminary hearing within 14 days of his initial appearance, if he is detained.  Federal Rule of Criminal Procedure 5.1.  His right to a preliminary hearing, and the exercise of that right, does not provide a basis for continuing his detention hearing.

II. **This Court should reconsider it's determination that the Government has demonstrated probable cause for unlawful possession of a firearm under 18 U.S.C. 922 (g).**

Moreover, Mr. Douglas requests that this Court reconsider its finding of probable cause.  The D.C. Circuit, in accordance with common law, has long required that the government prove knowledge for weapons possessions offenses.  *See e.g. United States v. Burke,* 888 F.2d 682 (D.C. Cir. 1989) (noting the standard used in the "criminal prosecution of firearms possession … requires proof that the defendant knew that he was in possession of a firearm.").  ""Knowing **possession**" requires (1) **knowledge** that one possesses certain items and (2) **knowledge** as to what those items actually are."  *United States v. Herron¸*567 F.2d 510, 520 (D.C. Cir. 1977).  In this case, the government proved only that Mr. Douglas had possession of a backpack.  There is not a scintilla of evidence that Mr. Douglas knew that he possessed a firearm within the pocket of a backpack.  Accordingly, the Court should find that the government has not established probable cause in this case.

### III.     Mr. Douglas has a right to a timely preliminary hearing and the Court should deny the government's Motion to Continue.

Government's counsel has informed the defense that it intends to move the court to continue the preliminary hearing to the point in which the Chief Judge's Standing Order expires. The government asks this Court to do what the Chief Judge has declined to do and what Congress has declined to do – to indefinitely continue hearings without regard for Due Process. The government's request is so callously broad because, in this case, it has no specific justification to demonstrate "exceptional circumstances." It does not articulate a single case-specific argument – whether it be the unavailability of a witness, or evidence it wishes to present – that would justify a continued hearing. Without proffering any circumstances relevant to this case, it asks the Court to find circumstances relevant to every case – circumstances already considered by the legislature and by the judiciary. There is no support for the government's position and it should be rejected.

Preliminary hearings may be conducted by video, Mr. Douglas has a right to a timely preliminary hearing, and the government has been on notice that a preliminary hearing would be the default mechanism for finding probable cause. There is thus no good cause for a continuance and the government's motion to continue Mr. Douglas' preliminary hearing should be denied.

In essence, the government's arguments fly in the face of legislative action in the CARES Act, and judicial action in Chief Judge Howell's Standing Order No. 20-17. In response to the very concerns, the government raised, Congress included the following provision:

> VIDEO TELECONFERENCING FOR CRIMINAL PROCEEDINGS.— (1) IN GENERAL.—Subject to paragraphs (3), (4), and (5), if the Judicial Conference of the United States finds that emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID–19) will materially affect the functioning of either the Federal courts generally or a particular district court of the United States, the chief judge of a district court covered by the finding (or, if the chief judge is unavailable, the most senior available active judge of the court or the chief judge or circuit justice of the circuit that includes the district

>court), upon application of the Attorney General or the designee of the Attorney General, or on motion of the judge or justice, may authorize the use of video teleconferencing, or telephone conferencing if video teleconferencing is not reasonably available, for the following events: (A) Detention hearings under section 3142 of title 18, United States Code. (B) Initial appearances under Rule 5 of the Federal Rules of Criminal Procedure. (C) Preliminary hearings under Rule 5.1 of the Federal Rules of Criminal Procedure. (D) Waivers of indictment under Rule 7(b) of the Federal Rules of Criminal Procedure. (E) Arraignments under Rule 10 of the Federal Rules of Criminal Procedure. (F) Probation and supervised release revocation proceedings under Rule 32.1 of the Federal Rules of Criminal Procedure. (G) Pretrial release revocation proceedings under section 3148 of title 18, United States Code. (H) Appearances under Rule 40 of the Federal Rules of Criminal Procedure. (I) Misdemeanor pleas and sentencings as described in Rule 43(b)(2) of the Federal Rules of Criminal Procedure. (J) Proceedings under chapter 403 of title 18, United States Code (commonly known as the ''Federal Juvenile Delinquency Act''), except for contested transfer hearings and juvenile delinquency adjudication or trial proceedings.

Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), P.L. 116-136, Section 15002.

In response to congressional action, the Chief Judge issued Standing Order 20-17, authorizing video conference hearings not only for preliminary hearings, but also for plea hearings and sentencings – which can also, of course, require the presentation of evidence.

Standing Order 20-17 authorizes "the use of video conferencing, or telephone conferencing if video conferencing is not reasonably available, for all events listed in Section 15002 of the CARES Act." Section 15002(b)(1) of the CARES Act lists a number of criminal proceedings that may be conducted virtually, to specifically include "[p]reliminary hearings under Rule 5.1 of the Federal Rules of Criminal Procedure." Thus, "extraordinary circumstances" simply do not exist that could justify extending the time to hold Mr. Douglas' preliminary hearing, as the government claims. Section 15002(b)(1) of the CARES Act and the Standing Order 20-17 were intended to accommodate the exigency of the COVID-19 pandemic by allowing for video preliminary

hearings. Accordingly, the existence of the COVID-19 pandemic is not a legal basis to continue Mr. Douglas' preliminary hearing.

The government must make an actual and specific showing of "extraordinary circumstances." Fed. R. Crim. P. 5.1(d). But the government can offer only a generalized description of the administrative burden on law enforcement and prosecutors (which all parties share) of carrying on criminal litigation during this time, coupled with hypothetical hardships with no connection to this particular case. This case presents a possessory offense with officer witnesses.  There is simply no justification to suspend Mr. Douglas' fundamental due process rights –when he is asserting the rights that have not already been curbed by the pandemic.

The government then asserts that social distancing could not be maintained if the preliminary hearing were to go forward as schedule. But that is assuming the hearing would involve personal appearances inside the courtroom, and thus overlooks that the proceeding would be conducted virtually, as authorized by Section 15002(b)(1) of the CARES Act and as envisioned by the Chief Judge's Standing Order. Initial appearances (including Mr. Douglas'), detention hearings (including Mr. Douglas), supervised release revocation hearings, sentencings, and felony plea hearings are all now being conducted by remote means, either via video conferencing technology or telephonically. Those proceedings are all multi-party and multi-participant. Recently, these proceedings have been proceeding in a reasonably efficient manner..

Finally, the formal authority for conducting Mr. Douglas' preliminary hearing by video has existed for nearly two weeks.  The government has known from the outset that Mr. Douglas could not possibly be indicted and that a video preliminary hearing was inevitable. Standing Order 20-17 was promulgated on March 29, 2020.  The government was thus on notice from the case's inception that video means were authorized to conduct Mr. Douglas' preliminary hearing. The

government was similarly on notice that a video preliminary hearing was the only mechanism available for a probable cause inquiry. The government was aware that it was impossible to indict Mr. Douglas, since it was aware that the grand jury is not in session. Accordingly, there is no good cause to continue Mr. Douglas' preliminary hearing.

Under Rule 5.1, a magistrate judge "must conduct a preliminary hearing unless . . . the defendant is indicted." Conducting a preliminary hearing is the rule. Indictment by grand jury is the exception, even though there is "administrative pressure to avoid the preliminary examination" and an institutional norm in this district for grand jury proceedings.[1] Accordingly, the lack of an ability to indict Mr. Douglas does not obviate Mr. Douglas' right to a preliminary hearing; rather, it highlights the importance of the right.[2] By the same token, having no grand jury in session does not form a basis to continue Mr. Douglas' preliminary hearing; it is precisely the reason why the preliminary hearing should go forward, not to mention why the government had every reason to expect that it would go forward.

**IV.  Additional developments at the D.C. Jail demonstrate the DOC's inability to keep individuals safe during the pandemic.**

In Mr. Douglas' first night at the jail, the DC DOC correctional officers report that they dispersed oleoresin Capsicum into the *individual cells* of inmates. The crime? They were placing their hands in the slots from the cells in protest because they had not received showers for several days. In addition, one individual at the D.C. Jail, who is responsible for delivering food trays to inmates, also tested positive.

---

[1] Fed. R. Crim. P. 5.1, Notes of Advisory Committee on Rules (1972).

[2] A District Court in Nevada recently rejected similar government arguments in *United States v. Summerfield¸* 2:20-mj-00231 (Apr. 21, 2020).

**CONCLUSION**

There is no good cause to continue Mr. Douglas' preliminary hearing. Unless the government is ready to proceed, the defendant must be released from custody. 18 U.S.C. § 3060(d). In addition, the Court should revisit the probable cause determination. In any event, Mr. Douglas should be release.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

EUGENE OHM
Assistant Federal Public Defenders
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500