**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **1:20-MJ-00068 (DAR)** |
| | : | |
| **v.** | : | |
| | : | |
| **THEODORE DOUGLAS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MOTION TO CONTINUE**
**PRELIMINARY HEARING AND RESPONSE TO**
**DEFENDANT'S MOTION FOR A DETENTION HEARING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully requests that the Court continue the preliminary hearing in this case until June 15, 2020, or a date thereafter that is convenient for the Court and the parties.  By way of argument, the Government provides the following facts:

**PROCEDURAL HISTORY**

On April 23, 2020, the Defendant appeared before this Court for an initial appearance on a Criminal Complaint, charging the Defendant with Felon in Possession of a Firearm, in violation 18 U.S.C. § 922(g).  On that same date, the Government requested pretrial detention pursuant to the Bail Reform Act, 18 U.S.C. §§ 3142 (f)(1)(A), (f)(2)(A) and 3142(f)(1)(E).  On April 24, 2020, the Court conducted a detention hearing and granted the Government's motion.  Citing the defendant's prior failures to comply with conditions of court supervision, including absconding in a pending case for nearly five years, this Court found that the defendant was a risk of flight and that there was no condition or combination of conditions, which would reasonably assure the defendant's appearance in court.  This Court also noted that the defendant has an outstanding parole warrant that is currently acting as a detainer.

 On March 16, 2020, Chief Judge Howell issued Standing Order, In Re:  *Court Operations*

1

*In Exigent Circumstances Created By the Covid-19 Virus*, Standing Order No. 20-9 (BAH)(March 16, 2020).  The Standing Order specified that the District Court would remain open, but with limited operations.  *Id.*  It further specified that the criminal duty Magistrate Judge would continue to conduct proceedings, specifically including initial appearances and detention hearings, after arrest.  *Id.*  The Standing Order did not mention Preliminary Hearings.  However, this Order specifically tolled the 30-day time period to indict from March 17, 2020 through April 17, 2020. On April 2, 2020, the Chief Judge issued a new Standing Order.  *See In Re: Extension of Postponed Court Proceedings in Standing Order 20-9 and Limited Court Operations in Exigent Circumstances Created by the COVID-19 Pandemic*, Standing Order 20-19 (BAH)(April 2, 2020). Citing the conditions presented by COVID-19, the current Standing Order recognizes that it would be "unreasonable to expect return and filing of [an] indictment within the period specific in section 3161(b)," 18 U.S.C. § 3161(h)(7)(B)(iii), due to the "unavailability of a grand jury in this district arising from suspension of grand jury sessions in the interest of public health and safety."  *Id.* Therefore, the current Standing Order further tolls the 30-day time period for filing an indictment, pursuant to 18 U.S.C. § 3161(b), from April 17, 2020 until June 11, 2020.

## BRIEF FACTUAL SUMMARY

On Wednesday, April 22, 2020, at approximately 2:59 p.m., members of the Metropolitan Police Department (MPD), Narcotics and Special Investigations Division (NSID) were conducting an observation post in the 2300 block of 15th Street, Northeast, Washington, D.C. An undercover officer (UC 2268) observed an individual, later identified as Theodore Douglas (Defendant Douglas), standing in the walkway between 2315 and 2317 15th Street, Northeast. An individual, later identified as Tavonte Williams (Defendant Williams), approached Defendant Douglas. Defendant Williams handed Defendant Douglas a black bag with shoulder straps. Defendant

Douglas appeared to UC 2268 to be in a hurry to take off the blue jacket he was wearing, put the black bag just handed to him by Defendant Williams onto his back, and then put his blue jacket on over the black bag. After this, UC 2268 observed Defendant Douglas give Defendant Williams an unknown amount of U.S. currency, completing the exchange with a handshake. UC 2268's training and experience, as well as what appeared to be Defendant Douglas's hurried attempt to remove his jacket and conceal the backpack under the jacket, led UC 2268 to believe that Defendant Douglas had just purchased something illegal from Defendant Williams.

UC 2268 alerted other officers in the area and Officers moved in to stop both Defendant Williams and Defendant Douglas. Defendant Douglas was stopped by Officer Poupart and Defendant Williams was stopped by Officer Gabster. Both individuals stopped were positively identified by UC 2268 as the individuals observed exchanging the backpack and U.S. currency. Defendant Douglas was wearing a backpack under his jacket, as observed by UC 2268. Officer Poupart conducted an external frisk of the backpack worn by Defendant Douglas and immediately felt what he recognized to be a firearm. Officer Poupart opened the backpack and observed a firearm inside.

Defendant Williams and Defendant Douglas were placed under arrest. Defendant Douglas was also determined to have a bench warrant. The firearm that was recovered from the backpack that Defendant Williams was seen handing to Defendant Douglas was determined to be a Sig Sauer, model P320, .40 caliber semiautomatic handgun with an obliterated serial number. When the firearm was recovered, it was loaded with one (1) round in the chamber and twelve (12) rounds in a thirteen (13) round capacity magazine. Portions of the officers' contact with the defendants were captured on police body worn camera (BWC) video.

**ARGUMENT**

I.    *Preliminary Hearings*

Federal Rule of Criminal Procedure 5.1(c) provides that a magistrate judge must hold a preliminary hearing "within a reasonable time, but no later than 14 days after the initial appearance if the defendant is in custody and no later than 21 days if not in custody." The defendant may consent, upon a showing of good cause, to continue the hearing. Rule 5.1(d). If the defendant does not consent, "the magistrate judge may extend the time limits only on a showing that extraordinary circumstances exist and justice requires the delay." *Id.* This rule is also codified in 18 U.S.C. § 3060(c).

As noted by the Second Circuit, the "extraordinary circumstances" standard for granting continuances was "added to the Rule in 1972 to prohibit the practice in some districts of routinely granting a continuance to allow the Government to satisfy the probabl[e] cause requirement by filing an indictment." *United States v. Gurary*, 793 F.2d 468, 472 (2d Cir. 1986).  While the extraordinary-circumstances hurdle may be difficult, it should not be impossible. Indeed, before the Rule was enacted, the D.C. Circuit noted, "if because of some extraordinary circumstance no magistrate were available, it would not follow that [a preliminary hearing] could continue." *Coleman v. United States*, 313 F.2d 576 (D.C. Cir. 1962); *Mitchell v. United States*, 316 F.2d 354 (D.C. Cir. 1963) (holding the same). Thus, the inability to have a court available to conduct such a hearing would, in limited situations, represent such a compelling circumstance.

In fact, multiple jurisdictions have granted continuances of preliminary hearings as result of the COVID-19 pandemic.  In *United States v. Carrilllo-Villa,* Case no. 20 Mag. 3073, 2020WL1644773 *2 (S.D.N.Y. April 2, 2020), Chief Magistrate Judge Gabriel Gorenstein granted the government's motion to extend the deadline to hold a preliminary hearing for a defendant

4

charged drug trafficking offenses, finding the COVID-19 pandemic an extraordinary circumstance under Fed. R. Crim. P. 5.1(d).  The Court in *Carrilllo* cited the fact that a number of recent cases from the Southern District of California have found that extraordinary circumstances were demonstrated as a result of the COVID-19 epidemic.  Quoting *United States v. Munoz,* 2020 WL 1433400 (S.D. Cal. Mar. 24, 2020), where the court extended the preliminary hearing deadline by 30 days, the court stated:

> "[E]xtraordinary circumstances exist and justice requires" that defendant's preliminary hearing be continued beyond the 14-day deadline of Fed. R. Crim. R. 5.1(c).  As outlined in the Order of the Chief Judge, current health restrictions have "greatly jeopardized" the ability of counsel, witnesses, parties, and Court staff to be present ion the courtroom.  As a result, the Court has suspended "all proceedings under Federal Rule of Criminal Procedure 5.1" until April 16, 2020.  For these reasons, the deadline for holding a preliminary hearing in this case will be extended to April 24, 2020, absent further order from this court.

*Id.* at 2 (quoting *Munoz,* 2020 WL 1433400 at *1).  In addition to noting that the same disruptions exist in New York that served as the basis for the extension order in the Southern District of California, the court in *Carrilllo* recognized the legitimate impediments to holding a preliminary hearing raised by the government, including that multiple law enforcement officials would be required to travel to the district to testify and that relevant evidence could be potentially unavailable.  *Id.*  Finally, the court in *Carrilllo* held that "the additional burden that was placed on him [the defendant] by being incarcerated during the current epidemic for any extension period that is granted, we do not find that these conditions bear on the 'extraordinary' circumstances analysis under Rule 5.1(d)…"

II.     *Coronavirus (COVID-19) Global Pandemic and Court Operations*

As this Court is well aware, COVID-19 is a severe acute respiratory virus that has infected hundreds of thousands of people across the world. What began in December of 2019 in Wuhan,

China, has quickly spread to the United States in a relatively short period. On March 11, 2020, the World Health Organization categorized COVID-19 as a worldwide pandemic. That same day, Mayor Muriel Bowser declared a state of emergency in the District of Columbia. On March 13, 2020, President Donald J. Trump issued an executive order declaring a National Emergency to combat COVID-19.

As of April 27, 2020, there are over 3,528 confirmed cases of COVID-19 in the District of Columbia alone, and COVID-19 cases continue to rise across the United States. Thousands of people in the region have self-quarantined based on possible exposure to COVID-19. As of March 16, 2020, dozens of large jurisdictions—including the District—have shut down local businesses to avoid further infection. Several states have even postponed primary elections in the upcoming presidential contest. Overall, the normal daily routine of millions of Americans has come to a halt as a result of this outbreak.

The judiciary has recognized and appropriately reacted to this extraordinary situation. The Supreme Court, for example, cancelled oral argument for the first time in a century. *See* Robert Barnes, *Supreme Court to Postpone Arguments over Coronavirus Crisis, a First Since 1918*, Wash. Post (Mar. 16, 2020). This Court has also taken action.  As stated above, on March 16, 2020, the Chief Judge of the U.S. District Court for the District of Columbia issued a standing order regarding court operations in the D.C. District Court. *See* Standing Order 20-9 (BAH). The Court cited the ongoing state of emergency, the need to reduce exposure to the virus, particularly to high-risk persons, and the restrictions placed on public gatherings by the Mayor of the District of Columbia and other local jurisdictions. *Id.* ("reflecting the seriousness of the need to combat the community spread of the virus"). As part of the standing order, while the courthouse remains open to "support essential functions," the overall expectation is to dramatically reduce the need to appear

6

in person and the possible exposure of litigants. *Id.* To that end, while the criminal duty Magistrate Judge "will continue to conduct proceedings . . . as necessary," the vast majority of hearings, to include jury trials, have been postponed and continued until further order of the Court. *Id.* A subsequent Standing Order, as noted above, was issued on April 2, 2020. This largely suspends the District Court's operations through June 11, 2020. *See* Standing Order 20-19 (BAH).[1]

III.     *The Request to Continue*

The COVID-19 outbreak has temporarily changed the operating procedure for this courthouse and the entire nation. To avoid unnecessary exposure, federal, state, and local jurisdictions have taken unprecedented measures to reduce the need for people to remain in public. These measures have touched every part of our life, from sports and entertainment to schools and universities to the criminal justice system. In this respect, it is incumbent that we take appropriate prophylactic actions to reduce viral exposure to all persons, including attorneys, courthouse personnel, defendants, law enforcement, and judicial officers. Simply put, the more time we spend in open court, the greater the opportunity to endanger others.

The current state of emergency sufficiently represents both "good cause" and "extraordinary circumstances" under both standards set forth above. Indeed, it is hard to imagine any better cause for delay than a global pandemic causing a massive shutdown of government and private resources and dire warnings to limit in-person contact. Over the past few weeks, the Court has endeavored to conduct court appearances remotely. At first, magistrate court was attempting to provide defendants access to the Courts via video teleconferencing (herein "VTC"). However, it was determined that the VTC process still required an unreasonable number of court personnel

---

[1] Indeed, on April 27, 2020, Chief Judge Howell ordered that anyone entering the courthouse must wear a facemask unless sufficient space exists to maintain social distancing of six feet. *See* Standing Order 20-26 (BAH).

to be physically present, and so that practice has currently been suspended.  In magistrate court, over the past few weeks, appearances have been handled strictly telephonically- with all parties, including defendants in custody, like DOUGLAS, appearing remotely by phone.  While an initial appearance can be brief and managed effectively, conducting a full-fledged hearing is simply not possible given the current state of circumstances.  At present, undersigned is not aware of any procedures in place to conduct a VTC that would adequately afford all parties sufficient protection from potential infection from the COVID-19 virus.

The Government has endeavored to conduct immediate detention hearings during these initial appearances.  In an effort to avoid in person contact, the Government has relied on statements and factual assertions contained in the sworn Criminal Complaints, and has proceeded by proffer, rather than calling witnesses.  A preliminary hearing, however, is quite different.  There is no effective way to conduct this type of hearing telephonically.  Rather, a probable cause hearing would require multiple persons to be present for an extended period in a confined courtroom, including witnesses, attorneys, the clerk(s), a reporter, other courtroom staff, and the court.  *See Carrilllo,* 2020WL1644773 at \*2. It is also unclear whether the Defendant would need to be transported to Court for this purpose, or if VTC could be available after all of the other parties would have to make themselves physically present. This entails prolonged exposure of all participants to each other in a confined space. It sometimes also requires indirect contact between participants, such as during the potential transfer of exhibits and/or documentation between parties. Moreover, behind the scenes, Deputy U.S. Marshals will have to administer security and transportation on a greater scale, while courthouse personnel, Assistant United States Attorneys, and defense counsel, will have to appropriately prepare for hearings too.

Furthermore, the practical limitations of conducting a full-blown preliminary hearing via

8

VTC where all participants appear remotely from separate locations are apparent. For example, there is BWC video and audio evidence in this case that may be pertinent, as well as photographic evidence. It uncertain how such evidence could be clearly and effectively presented or challenged during a VTC. As noted by counsel for the defendant, Mr. Ohm, during the detention hearing on April 27, 2020, he was unable to consult with his client to address questions the Court had regarding the defendant's background and expressed "frustration" with proceeding remotely. Certainly, such limitations would only be exacerbated during the conduct of a full-blown evidentiary hearing. Other likely challenges in conducting a VTC under such circumstances would be maintaining an orderly hearing that allows for objections and sidebar conferences. Furthermore, the likelihood of technical difficulties during a VTC, which could effectively delay or terminate such a proceeding further militate towards delaying a preliminary hearing until June 15, 2020, after the court re-opens.[2]

Finally, unlike in *Gurary*, where the court was concerned about the Government attempting to delay a hearing until an indictment could be sought, here, grand jury operations are suspended until at least June 11, 2020. Standing Order 20-19 (BAH).  As the Court has already found in the current Standing Order, the ends of justice are served by this requested delay.[3]

IV.    *Probable Cause*

Defendant again raises in his motion for a detention hearing the claim that there was

---

[2] The defendant's arguments in his motion for a detention hearing (ECF # 2) proffering anecdotes concerning discipline imposed or uses of force at the jail are irrelevant to these proceedings and should be disregarded by the Court.

[3] The defendant's reliance in his motion [ECF # 2] upon *United States v. Summerfield,* Case No. 2:20-cv-00713 APG-BNW, is misguided and provides little insight into the issues raised by the instant motion.  The Court in *Summerfield* provided no analysis of the "extraordinary circumstance" standard in Fed. R. Crim. P. 5.1 raised here, nor is there any discussion in that opinion of what procedures are being used in Nevada for VTC hearings.

insufficient evidence set forth in the Criminal Complaint to support a finding of probable cause. Specifically, the defendant asserts that there is no evidence of his client's knowledge of the presence of the firearm inside the backpack.  However, in addition to circumstances of the transfer of the bag to the defendant in exchange for money and the acts of concealment and nervous behavior observed by the UC, the Criminal Complaint also includes the fact of the defendant's two prior convictions for possessory firearms offenses.  As the Court is aware, such evidence is ordinarily admissible to establish a defendant's knowledge of, and intent to possess, a firearm, particularly in constructive possession cases such as this one.  *See* Fed. R. Evid. 404(b); *United States v. Moore*, 75 F. Supp. 3d 444, 451-452 (D.D.C. 2014) (finding prior unlawful possession of a firearm evidence admissible under Rule 404(b) to show intent or lack of mistake and citing *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001) ("[W]here a defendant is charged with unlawful possession of something, evidence that he possessed ... similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged.")). Accordingly, the defendant's two prior possessory firearms convictions can and should be considered by the Court as evidence of his knowledge of the firearm recovered from the backpack he was carrying when police stopped him.

## CONCLUSION

The Government's request to continue the preliminary hearing is neither unfettered nor unreasonable. Given the present extraordinary circumstances, the safest course of action is to continue all hearings that require substantive, in-person litigation, and which could not be effectively conducted telephonically.  The aforementioned facts establish that "extraordinary circumstances exist" such that it is appropriate to postpone the preliminary hearing, and further establish that justice requires the delay resulting from the postponement of the preliminary hearing,

pursuant to Fed. R. Crim. P. 5.1(d). As such, the Government respectfully requests that this Court continue the hearing to June 15, 2020.

WHEREFORE, the United States respectfully requests that the Court grant the instant motion.

Respectfully submitted,

TIMOTHY J. SHEA
D.C. Bar 437437
United States Attorney

By:    /s/*Steven B. Wasserman*
Steven B. Wasserman
Assistant United States Attorney
D.C. Bar No. 453251
555 Fourth Street, N.W.,
Washington, D.C. 20530
202-252-7719
Steve.wasserman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that, by filing the foregoing via the Court's Electronic Case Filing System, I caused a copy of the foregoing to be delivered electronically to counsel of record, on April 28, 2020.

*/s/ Steven Wasserman*
Steven B. Wasserman