**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA** :
                              :
      **v.**                       :         1:20-mj-68
                              :
**THEODORE DOUGLAS**          :

**APPEAL OF MAGISTRATE COURT'S DETENTION ORDER**

      Based on a criminal complaint charging one count of Unlawful Possession of a Firearm (Felon), in violation of 18 U.S.C. § 922 (g), Mr. Theodore Douglas is preventatively detained at the D.C. Jail. At the preliminary hearing, the government brought forth evidence that raised substantial doubts about the government's evidence. In addition, Mr. Douglas has a sparse criminal record that does not support a finding that he is a danger to the community. Mr. Douglas now appeals the magistrate decision because the government has not proven, by clear and convincing evidence that he poses a danger to the community and because the government cannot show, by clear and convincing evidence, that there are no conditions nor combination of conditions of release that will reasonably assure the safety of the community.

**Introduction**

      Mr. Theodore Douglas is a 29 year-old man who has been a lifelong resident of the metropolitan D.C. area. He supports his two year old daughter and works for a moving company – although that work has not been meaningful since the pandemic began. Mr. Douglas has two prior convictions and was on supervised release from August 2014 until November 2015, when he became a loss of contact. Despite this obviously negative factors, Mr. Douglas had a warrant

for him for nearly 5 years, demonstrating that he did not have a single contact with law enforcement during that period.

In addition, Mr. Douglas current situation leaves him in a legal limbo that may well leave him serving more prison time. Because he was on supervised release at the time of his arrest, and because of the aggressive policies of the U.S. Parole Commission, the detainer has not lodged and Mr. Douglas is not accruing time towards his supervised release case. Instead, he is only accruing time in this case – a case that raises substantial challenges for the government. Given the uncertain status of this Court, Mr. Douglas may have to wait many months to prevail in this case and then would have to face the Parole Commission without credit for any time-served. Mr. Douglas has already been detained for two months and the government has yet to return an indictment.

In sum, in applying the Bail Reform Act factors, this Court can fashion a set of conditions that will reasonably assure the Court of the safety of the community and his return to Court.

**Factual Background**

On April 22, 2020, on the 2300 block of 15th St NE, an undercover officer for the Metropolitan Police Department was conducting operations from an observation post. An undercover officer claimed to see an individual that he later identified as Theodore Douglas give money to an individual later identified as Tavonte Douglas. The undercover claimed that Mr. Williams then gave a designer Coach backpack to Mr. Douglas and Mr. Douglas put the backpack on under his bag before the two men parted.

The undercover officer called in arrest teams and Mr. Douglas and Mr. Douglas were stopped. Mr. Williams was searched but no money was recovered. Mr. Douglas was placed in handcuffs and the officers searched Mr. Douglas' backpack based upon the undercover's

observations. Officers recovered a firearm from the backpack. Mr. Douglas made no statements or gestures indicating knowledge of the firearm and no identifying documents were recovered from the backpack.

**Argument**

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); see also *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." Id. at 1405.

The government bears the burden of demonstrating, by clear and convincing evidence, that preventative detention is necessary to ensure the safety of the community. Mr. Douglas is charged under 18 U.S.C. § 922 (g) – an offense without a presumption for detention.

    A. The Government has not proven, by clear and convincing evidence, that preventative detention is necessary to ensure the safety of the community.

Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has set forth clear and convincing evidence overcoming the

presumption of release for Mr. Douglas be detained.  They are:  1) the nature and circumstances of the offense charged; 2) the weight of the evidence; 3) the history and characteristics of the person charged; and 4) the nature and seriousness of the danger posed by the person to any person in the community if he is released.  18 U.S.C. 3142 (g).

Weighing all of these factors, this Court should release Mr. Douglas.

1. Nature and Circumstances of the Offense Charged

First, it must be noted that Congress, when assessing the appropriateness of pretrial detention for 922 g offenses, declined to enact a rebuttable presumption for detention.  Nothing about the facts of this case suggest otherwise.  Mr. Douglas was not accused of brandishing or pointing the gun.  In fact, he is not accused even of holding the firearm in his person.  The government is proceeding under purely circumstantial evidence of construction possession – that does not involve an allegation that he touched the firearm in any way.  When approached, Mr. Douglas did not run, flee or resist in any way.

2. The weight of the evidence

The weight of the evidence in this case is weak for two reasons.  First, the evidence that Mr. Douglas possessed the firearm is weak.  Second, the police action here violated Mr. Douglas' Fourth Amendment rights and litigation of this issue will likely lead to suppression.

There is little evidence that Mr. Douglas had knowledge, dominion or control of the firearm inside of a backpack that he had received minutes before the officers searched him.  Mr. Douglas had only momentary possession of the Coach bag and the backpack had no indicators of whom owned the backpack. The government presented two indicators that Mr. Douglas would know what was in the backpack (the alleged money exchange and the placement of the backpack under the jacket).  However, no money was recovered from Mr. Williams, undermining the

reliability of the undercover's observations. Moreover, knowledge of a firearm in a backpack does not logically follow from the allegation that Mr. Douglas wore his jacket over the backpack. The backpack was not transparent –there is nothing that the jacket was concealing other than the Coach backpack itself. In short, the government has no reliable evidence that Mr. Douglas knowingly possessed a firearm.

In addition, the government's presentation of evidence demonstrates that Mr. Douglas' Fourth Amendment rights were violated when the officer conducted a seized Mr. Douglas and searched the backpack on Mr. Douglas without probable cause or consent. *See United States v. Taylor*, 289 F. Supp. 3d 55, 67 (D.D.C. 2018) ("courts should disregard, or at least place diminished reliance on, suppressed evidence in applying the 'weight of the evidence' factor"). "There is a Fourth Amendment seizure "when physical force is used to restrain movement or when a person submits to an officer's 'show of authority.'" *United States v. Brodie*, 742 F.3d 1058, 1061 (D.C. Cir. 2014) (quoting *California v. Hodari D.*, 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*¸446 U.S. 544, 554 (1980) (citing *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). In this case, at least two armed officers approached Mr. Douglas, and seized him by walking him away from a group of men, placing him in handcuffs and searching him. Then, an officer conducted a search of the backpack requiring probable cause when he

"squeezed" and "manipulated" its contents. *Minnesota v. Dickerson*, 508 U.S. 366, 377-378 (1993). See Defense Exhibit A.[1]

At the time Mr. Douglas was seized, the officers at most, had reason to suspect him of possessing something that he would not want the public to see. There was no reason to suspect that Mr. Douglas had a firearm and no basis to seize and search Mr. Douglas.

The weight of the evidence factor, while always vital when considering preventative detention, is even more important now. The Court remains closed. Grand juries have begun to open but Mr. Douglas' case has not been indicted despite his detention for nearly 3 months (and over the 70 days contemplated by the Speedy Trial Act). When court opens, there is no plan to prioritize trials or indictments. One cannot reasonably provide an estimate as to when this motions hearing will be decided or when this case will go to trial.

Should Mr. Douglas prevail, as counsel submits he is likely to do, his detention – under restrictive and harsh conditions because of the pandemic, will not count. Because his parole warrant has not issued, he is not accruing time for his supervised release violation. Release in this case may not send Mr. Douglas home, but it will at least mean that the time he is serving is assured to be counted.

3. The history and characteristics of defendant.

The history and characteristics of defendant weigh in support of release. Mr. Douglas is an involved father of a four year old girl who has strong family support in the community. He is a lifelong resident of the area. He worked for a moving company but his employment was spotty at the time of his arrest. Mr. Douglas has two handgun convictions, one from when he was nineteen and another from when he was 23. He has completed probation successfully once but

---

[1] The time stamp of this sequence begins at 2:07.

was not compliant with his terms of supervised release after serving 18 months on his second conviction.

In addition, while Mr. Douglas does not have a substantial conditions that make him "high risk" of COVID-19 by definition, the D.C. Jail has proven to be punitive during the pandemic. Because of restrictions, residents are limited to an hour a day outside of their cells.

4. The Nature and Seriousness of the Danger to Any Person in the Community

Mr. Douglas is not a danger to anyone in the community. There is no allegation that he used this firearm in a threatening manner, pointed it, brandished it or even threw it. Again, the legislature did not tie possession of a firearm to a rebuttable presumption for detention. Moreover, nothing in his remotely recent past demonstrates that he presents a danger. He has no previous crimes of violence, armed offenses or any sort of assaultive behavior. He has only been convicted of possessory offenses.[2]

II.     Placement

Mr. Douglas' sister resides in Washington DC and her home is available to Mr. Douglas and to pretrial supervision if the Court so desires.

**Conclusion**

Wherefore, for the foregoing reasons, the government has not met its burden of demonstrating that there no conditions or combination of conditions that will assure the safety of the community. Mr. Douglas respectfully requests that the Court reverse the Magistrate Court's decision and release Mr. Douglas.

---

[2] Again, it is far from clear that Mr. Douglas would even be released into the community as the Parole Commission would have to release him. However, release in this case would start the clock of time that he is accruing towards a sentence for a supervised release violation.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500