**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **v.** | : | **Criminal No. 20-MJ-068** |
| | : | |
| **THEODORE DOUGLAS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR REVIEW AND MODIFICATION OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes Defendant's Motion for Review and Modification of Pretrial Detention (Dkt. #22). In support of this opposition, the United States submits the following:

**FACTUAL AND PROCEDURAL ACKGROUND**

On Wednesday, April 22, 2020, at approximately 2:59 p.m., members of the Metropolitan Police Department (MPD), Narcotics and Special Investigations Division (NSID) were conducting an observation post in the 2300 block of 15th Street, Northeast, Washington, D.C. An undercover officer (UC 2268) observed an individual, later identified as Theodore Douglas (Defendant Douglas), standing in the walkway between 2315 and 2317 15th Street, Northeast. An individual, later identified as Tavonte Williams (Defendant Williams), approached Defendant Douglas. Defendant Williams handed Defendant Douglas a black bag with shoulder straps. Defendant Douglas appeared to UC 2268 to be in a hurry to take off the blue jacket he was wearing, put the black bag just handed to him by Defendant Williams onto his back, and then put his blue jacket on over the black bag. After this, UC 2268 observed Defendant Douglas give Defendant Williams an unknown amount of U.S. currency, completing the exchange with a handshake. UC 2268's training

and experience, as well as what appeared to be Defendant Douglas's hurried attempt to remove his jacket and conceal the backpack under the jacket, led UC 2268 to believe that Defendant Douglas had just purchased something illegal from Defendant Williams.

UC 2268 alerted other officers in the area and Officers moved in to stop both Defendant Williams and Defendant Douglas. Defendant Douglas was stopped by Officer Poupart and Defendant Williams was stopped by Officer Gabster. Both individuals stopped were positively identified by UC 2268 as the individuals observed exchanging the backpack and U.S. currency. Defendant Douglas was wearing a backpack under his jacket, as observed by UC 2268. Officer Poupart conducted an external frisk of the backpack worn by Defendant Douglas and immediately felt what he recognized to be a firearm. Officer Poupart opened the backpack and observed a firearm inside.

Defendant Williams and Defendant Douglas were placed under arrest. Defendant Douglas was also determined to have a bench warrant.    The firearm that was recovered from the backpack that Defendant Williams was seen handing to Defendant Douglas was determined to be a Sig Sauer, model P320, .40 caliber semiautomatic handgun with an obliterated serial number.    When the firearm was recovered, it was loaded with one (1) round in the chamber and twelve (12) rounds in a thirteen (13) round capacity magazine.    Recovered from Defendant Williams's person during a search incident to arrest were the two cellphones.[1]    Officers did not recover any money from Williams's person at the time of his arrest, however, Williams was not arrested until several

---

[1] As discussed further *infra*, one of the cellphones seized from co-defendant Williams was linked to Douglas after the execution of a judicially authorized search warrant revealed numerous photographs of Douglas that were saved on the phone.    Furthermore, multiple photos of firearms were recovered from this cellphone, including a photo of Douglas holding a firearm.

minutes after Douglas, and Williams was standing in close proximity to at least two other individuals at the time of his arrest.    Portions of the officers' contact with the defendants were captured on police body worn camera (BWC) video.

On April 23, 2020, the Defendant Douglas appeared before Magistrate Judge Deborah A. Robinson for an initial appearance on a Criminal Complaint, charging the Defendant with Felon in Possession of a Firearm, in violation 18 U.S.C. § 922(g).    On that same date, the Government requested pretrial detention pursuant to the Bail Reform Act, 18 U.S.C. §§ 3142 (f)(1)(A), (f)(2)(A) and 3142(f)(1)(E).    On April 24, 2020, Judge Robinson conducted a detention hearing and granted the Government's motion.    Citing the defendant's prior failures to comply with conditions of court supervision, including absconding in a pending case for nearly five years, Judge Robinson found that the defendant was a risk of flight and that there were no condition or combination of conditions, which would reasonably assure the defendant's appearance in court. This Court also noted that the defendant has an outstanding parole warrant that is currently acting as a detainer.

On May 27, 2020, a preliminary hearing in this matter was held before Magistrate Judge G. Michael Harvey.    After hearing testimony from the arresting officer, Judge Harvey found probable cause to believe that the Defendant Douglas had committed the charged offense of felon in possession of a firearm and ordered that the defendant remain held without bond.[2]

---

[2] On June 15, 2020, a separate preliminary hearing was held for co-defendant Williams, and Magistrate Judge Robin Meriweather likewise found probable cause to believe that Williams had committed the charged offense.

## **THE BAIL REFORM ACT**

This Court reviews the magistrate's detention decision de novo.  *See, e.g., United States v. Delker,* 757 F.2d 1390 (3d Cir. 1985).   Specifically, "[i]n determining whether the release of a defendant would endanger the community, the court must consider any available information concerning the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; the weight of evidence against the person; various personal information including character, employment, past conduct and so on; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  *United States v. Smith,* 79 F.3d 1208, 1209 (D.C. Cir 1996*).  See also* 18 U.S.C. § 3142(g).   The court must find by clear and convincing evidence that no condition or combination of conditions will assure the safety of the community or the defendant's presence at future proceedings.  *See United States v. Peralta,* 849 F.2d 625, 626 (D.C. Cir. 1988).

The defendant must be held pending trial because he is a danger to the community, a risk of flight, and because it has been established by probable cause that he committed the charged offense of knowing possessing a firearm after conviction for an offense punishable by more than one year of imprisonment.   *See* 18 U.S.C. § 3142(e) ("If, after a hearing . . . , the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any person and the community, such judicial officer shall order the detention of the person before trial.")

It is well-established that the district court should consider the same statutory factors considered by the magistrate judge, including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and

characteristics; and (4) the nature and seriousness of the danger to any person or to the community, and the risk of flight, which would be posed by the defendant's release.   18 U.S.C. § 3142(g).

## I.     Nature and Circumstances of the Offense and Weight of Evidence

### A.     Instant Offense

As mentioned above, the evidence presented at the preliminary hearing established that the defendant was observed by the UC to have received a backpack from co-defendant Williams in exchange for cash.   The UC further observed Defendant Douglas appear to act nervously while receiving the backpack when he hurriedly concealed the backpack by placing his coat over it.   In addition, during the preliminary hearing, testimony was elicited that the defendant was asked by police what was inside the bag, and he claimed that only his glasses case was in the bag.   *See Exhibit A: Preliminary Hearing Transcript, May 27, 2020* at p. 39; lines 22-25; p. 40; line 1; p. 44; lines 14-22.   When officers conducted a search of the backpack, in addition to the loaded firearm, a glasses case was also recovered.   *Id.* at p, 42; lines 17-22.   The preliminary hearing revealed that through the defendant's own statements to the officers at the time he was lawfully stopped, he had knowledge of what was inside the backpack.

As referenced *supra,* additional evidence has been developed since the preliminary hearing that establish the defendant's connection to co-defendant Williams, as well as his knowledge of the presence of the firearm inside the backpack.   Specifically, one of the two phones seized from Williams at the time of his arrest was linked to Defendant Douglas through photos of Douglas that were found on the phone ("Douglas phone"), including the following photograph:



In addition, there were at least two additional photographs of firearms on the Douglas phone.   In a constructive possession case such as this, where the defendant has already claimed lack of knowledge of the presence of the firearm, the aforementioned photos in conjunction with his prior possessory firearms convictions, establish his knowledge of the gun's presence.[3]   Furthermore, the other phone (the "Williams phone") was directly linked to Williams through his Gmail account, as well as through photos of Williams that were recovered on the phone.   A judicially authorized search of both the Douglas phone and the Williams phone revealed multiple contacts between these two phones, including on April 18, 2020, April 21, 2020, and April 22, 2020 (the same day

---

[3] It is a further incriminating fact that co-defendant Williams was in possession of Douglas's cellphone, which at a minimum establishes they had contact prior to the arrival of the police.

both defendants were arrested).

The nature of the charged offense is very serious, particularly when viewed in the context of the current spike in gun violence in the District of Columbia and the defendant's two previous firearms related convictions.   As has been tragically demonstrated by the murder of an 11-year old boy in Southeast, Washington, D.C., over the July 4 weekend by at least two individuals who were on pretrial release for the exact same offense Defendant Douglas is charged with, pretrial release of offenders like Defendant Douglas can have lethal consequences.   *See* https://www.washingtonpost.com/politics/courts_law/2-arrested-2-wanted-after-11-year-old-killed-on-july-fourth/2020/07/10/e3e81fca-c2ea-11ea-8908-68a2b9eae9e0_story.html.   The defendant represents both a danger to the community and a risk of flight, and therefore, should continue to be detained pending trial in this matter.[4]

**B.      Prior Criminal Convictions**

The defendant's criminal history consists of the following convictions:

- A 2013 conviction for Possession of a Firearm (Prior Conviction); and

- A 2010 conviction for Carrying a Handgun;

The defendant also has a pending criminal case in D.C. Superior Court for Distribution of a Controlled Substance for which he absconded in 2015, and was a fugitive for approximately five

---

[4] In support of his motion, defense counsel makes the conclusory assertion that the defendant's Fourth Amendment rights were violated, "and litigation of this issue will likely lead to suppression." Dkt. #22 at p. 4.   Defense counsel's conclusory assertions concerning a future suppression motion do nothing to diminish the strength of the evidence against the defendant.   In addition, defense counsel asserts that the defendant will not receive credit for time served due to the entry of a parole detainer against him. *Id.* at 8.   However, defense counsel fails to cite provision in the Bail Reform statute that requires the district court to consider such factors in making the detention determination.

years prior to his arrest in the instant case.   Furthermore, the defendant was on parole when he was arrested in the pending drug case, and was listed in non-compliance with his conditions of parole.   The defendant's criminal history establishes a pattern of total disregard for the law, as well as for court ordered conditions of release.   Accordingly, the defendant is not a suitable candidate for pretrial release.

II.    **Defendant's History and Characteristics and the Nature and Seriousness of the Danger to Any Person or the Community**

The offense for which the defendant is charged is serious and involves conduct that presents a significant danger to the community.   He also has multiple convictions for weapons offenses and a pending case for a felony drug trafficking offense.   Both Judge Robinson and Harvey considered the nature and circumstances of the offenses, the weight of the evidence, defendant's history and character, danger to the community, and risk of flight.   Given the strength of the evidence against the defendant and his prior criminal history, clearly the danger posed by his release into the community and the serious risk that he will flee compels, as Magistrate Judges Robinson and Harvey found, his detention.[5]

---

[5]  The government anticipates that this case will be expeditiously presented to the grand jury now that grand jury proceedings have re-started.

WHEREFORE, for all of the foregoing reasons, and any reasons presented at a hearing on this matter, the United States respectfully requests that the defendant's motion for reconsideration of bond be denied.

Respectfully submitted,

MICHAEL R. SHERWIN
United States Attorney
N.Y.S. Bar No. 4444188


By:　　　　　　　　/s/
STEVEN B. WASSERMAN
DC Bar No. 453251
Assistant United States Attorney
555 4th Street, N.W. 4th Floor
Washington, D.C. 20001
(202) 252-7719 (Wasserman)
Steve.wasserman@usdoj.gov


## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion has been served via ECF to counsel for the defendant, Eugene Ohm, Esq., this 15th day of July 2020.

　　　　　　　/s/
STEVEN B. WASSERMAN
Assistant United States Attorney