UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **Criminal No. 1:20-cr-121 (CJN)** |
| : | |
| **THEODORE DOUGLAS** : | |
| _____ | |

### DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE
### AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Mr. Theodore Douglas, the defendant, through undersigned counsel, pursuant to the Fourth Amendment to the United States Constitution, respectfully moves this Honorable Court to suppress the use as evidence at trial, all tangible objects seized and statements made as the result of the unlawful search and seizure by officers of the Metropolitan Police Department ("MPD") of Mr. Douglas on the 2300 block of 15th Street, NE on April 22, 2020. Mr. Douglas requests an evidentiary hearing on this motion. In support of this motion, counsel submits the following.

### Factual Background

Mr. Douglas is charged in a one-count indictment with unlawful possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). The charge arose out of an incident that occurred on April 22, 2020.

On that date, MPD officers were conducting an undercover observation post. The undercover claimed to see an individual later identified as Tavonte Williams give a black backpack to Mr. Douglas. According to the undercover, Mr. Douglas then put the backpack on

1

over his shoulders and wore his jacket over the backpack. The undercover also claimed that Mr. Douglas then gave U.S. Currency to Mr. Williams. The undercover provided a lookout description and officers stopped Mr. Douglas. The officers ordered Mr. Douglas to walk several steps and placed him in handcuffs. The officer then requested permission to search the backpack from Mr. Douglas but Mr. Douglas did not consent. The officer requested permission to search the backpack over the radio, ostensibly to a supervisor. The officer then searched the exterior of the backpack. Shortly thereafter, the officer opened the backpack and discovered a firearm.

The officers did not have a warrant authorizing them to seize Mr. Douglas or search his backpack. No exceptions to the Fourth Amendment apply so the entry, arrest and subsequent search of Mr. Douglas, therefore, were unlawful.

## **Argument**

At the time that Mr. Douglas was stopped, the police did not have a warrant for his arrest or reasonable articulable suspicion. Probable cause is an essential prerequisite to an arrest. *Dunaway v. New York*, 442 U.S. 200, 213 (1979). Mr. Douglas was arrested at the point that the police officer stopped him and immediately handcuffed him. At that point, the police had no information that suggested that Mr. Douglas had committed a crime. The warrantless arrest of Mr. Douglas, therefore, was unlawful. The evidence seized and the statements made as a result of the illegal stop must be suppressed as the fruit of the unlawful arrest of Mr. Douglas. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (if the evidence has been obtained through the exploitation of a Fourth Amendment violation the evidence must be suppressed).

The evidence also must be suppressed as a fruit of the unlawful warrantless search of Mr. Douglas.  The Supreme Court has held that, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted).  Where the government seeks to introduce evidence seized without a warrant, it has the burden of showing that the evidence falls within one of the "few specifically established and well delineated exceptions" to the warrant requirement of the Fourth Amendment.  *Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971); *Katz v. United States*, 389 U.S. 347, 357 (1967).  Here, the police officers did not have a search warrant to search Mr. Douglas.

In addition, the government contends that the police had reasonable articulable suspicion to stop Mr. Douglas. First, this case involved an arrest and a search, not a stop and frisk.  But in any case, the officers did not have reasonable articulable suspicion.  "It is the government's burden to provide evidence sufficient to support reasonable suspicion justifying any stop." *United States v. Castle*, 825 F.3d. 625, 634 (D.C. Cir 2016) (citations omitted).  "Under *Terry*, and its progeny, a police officer may perform a protective frisk if he has reason to believe, based on 'specific and articulable facts … taken together with rational inferences from those facts,' that 'he is dealing with an armed and dangerous individual.'"  *United States v. Holmes*, 385 F.3d 786, 789 (D.C. Cir. 2004) (quoting *Terry v. Ohio*, 392 U.S. 21, 27 (1968). The officers did not have reasonable articulable suspicion that Mr. Douglas was armed until police searched the backpack and recovered the firearm.

Because Mr. Douglas was not lawfully under arrest at the time of the search, there is no applicable exception to the warrant requirement.

3

Absent a showing of an exception to the warrant requirement, the evidence seized from Mr. Douglas must be suppressed.

## **Conclusion**

For the reasons set forth above, and for such other reasons as this Court may determine at a hearing on this motion, Mr. Douglas respectfully requests that this motion be granted and that the Court suppress the use as evidence of all items seized and all statements made on April 22, 2020.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500