UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **Criminal No. 1:20-cr-121 (CJN)** |
| : | |
| **THEODORE DOUGLAS** : | |
| _____ | |

### MOTION TO SUPPRESS IDENTIFICATION TESTIMONY AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Defendant Theodore Douglas, through undersigned counsel, respectfully moves this Court, pursuant to the Fourth[1], and Fifth Amendments to the United States Constitution, to suppress the use as evidence of all testimony relating to all out-of-court identifications allegedly made by the witness in this case, and any in-court identifications derived from any out-of-court identification. Counsel requests a hearing on this Motion. In support of this Motion, counsel states the following:

### Factual Background

Mr. Douglas is charged in a one-count indictment with unlawful possession of a firearm by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1). The charge arose out of an incident that occurred on April 22, 2020.

On that date, MPD officers were conducting an undercover observation post targeting drug distribution. The undercover claimed to see an individual later identified as Tavonte

---

[1] Mr. Douglas timely filed a Motion to Suppress on August 21, 2020. At the time, counsel had not been informed that a witness had made an out-of-court identification. Although it would be a moot fruit, any identification of Mr. Douglas would also be a fruit of the Fourth Amendment violation and would be suppressed.

Williams give a black backpack to Mr. Douglas.  According to the undercover, Mr. Douglas then put the backpack on over his shoulders and wore his jacket over the backpack. The undercover also claimed that Mr. Douglas then gave U.S. Currency to Mr. Williams.  The undercover provided a lookout description and officers stopped Mr. Douglas.  The officers ordered Mr. Douglas to walk several steps and placed him in handcuffs.  The officer searched the exterior of the backpack, then opened the backpack and discovered a firearm.  The undercover then positively identified Mr. Douglas as the person he saw receive the backpack.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Because the police obtained these identifications of Mr. Douglas through the use of procedures so suggestive as to create a substantial likelihood of misidentification, the Fifth Amendment requires suppression of any out-of-court and in-court identifications of Mr. Douglas by the witnesses.  The totality of the circumstances surrounding these identifications demonstrates that they are unreliable, and therefore violate of due process.  As a result, the Court should exclude all testimony relating to any out-of-court and in-court identifications from Mr. Douglas' trial.

**I.     ALL IDENTIFICATION TESTIMONY MUST BE SUPPRESSED PURSUANT TO THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT**

The Due Process Clause of the Fifth Amendment prohibits the admission at trial of identification testimony where the circumstances of an out-of-court identification procedure are so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 293, 302 (1967).   In determining whether the identification procedure violates due process, courts examine the "totality of the

circumstances" surrounding the procedure.  See Stovall v. Denno, 388 U.S. 293, 302 (1967); Manson v. Brathwaite, 432 U.S. 98, 114 (1977).  When law enforcement officers utilize a suggestive identification procedure, an in-court identification may only be made if the government can point to indicia of reliability sufficient to justify its admission.  Neil v. Biggers, 409 U.S. 188, 201 (1972); Manson, 432 U.S. at 114.

The unnecessarily and impermissibly suggestive showup identification procedure used in this case by the government gives rise to a substantial likelihood of misidentification.  Courts have recognized that "confrontations in which a single suspect is viewed in the custody of the police are highly suggestive."  Russell v. United States, 408 F.2d 1280, 1284, cert. denied, 395 U.S. 928 (D.C. Cir. 1969).  See also, e.g., Stovall v. Denno, 388 U.S. 293, 302 (1967).

In this case, the police conducted a highly suggestive identification procedure.  The undercover officer viewed a single suspect, Mr. Douglas.  The police had Mr. Douglas in obvious custody when he was presented to the undercover for the showup procedure: at the time of the procedure, several uniformed officers were physically holding the handcuffed Mr. Douglas.  The undercover's understanding of the reason that the police had stopped Mr. Douglas combined with the other indicia of custody amplified the suggestive effect of this inherently suggestive identification procedure.

Once the suggestivity involved in an identification procedure becomes apparent, the Government has the burden of proving, by clear and convincing evidence, that the reliability of the identification outweighs the role of the suggestivity in producing the tainted identification. United States v. Wade, 388 U.S. 218, 241 (1967) (analogizing the process in analyzing suggestivity in identification procedures to the approach in considering the taint of a Fourth

Amendment violation); Clemons v. United States, 408 F.2d 1230, 1246 (1968). The determination rests on a balance between the degree of suggestivity and the strength or weakness of factors indicating reliability. Manson, 432 U.S. at 114. The reliability factors include the "opportunity of the witness to view the criminal at the time of the crime, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil, 409 U.S. at 192.

An analysis of the reliability factors in the present case—particularly the duration of the undercover officer's alleged observations, the fact that the officer was a stranger to Mr. Douglas, the suggestive nature of the procedure, the information provided to the undercover prior to the identification procedure and the imprecise and inaccurate identifying information the witness provided the arresting officers —will reveal the unreliability of the witnesses' identification. As a result, all testimony relating to out-of-court and in-court identifications of Mr. Douglas made by the undercover officer should be suppressed.[2] Where, as here, out-of-court identifications are unduly suggestive and unreliable, the Government should not be permitted to elicit in-court identifications.

## Conclusion

For the reasons set forth above, and for such other reasons as this Court may determine at a hearing on this motion, Mr. Douglas respectfully requests that this motion be granted and that the Court suppress the use of any identification testimony in his trial.

---

[2] The lack of information in the defense's possession about the circumstances under which the identification procedures were conducted entitles Mr. Douglas to a hearing on this issue. See In re F.G., 576 A.2d 724, 726 (D.C. 1990) (en banc).

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500