UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| | :  Criminal No. 1:20-MJ-00068 (DAR) |
| | : |
| **THEODORE DOUGLAS** | : |
| _____ | |

NOTICE OF FILING

Mr. Theodore Douglas, through his attorney, respectfully requests that the attached letter be made part of the record in this case.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

**FEDERAL PUBLIC DEFENDER**
**DISTRICT OF COLUMBIA**
**SUITE 550**
**625 INDIANA AVENUE, N.W.**
**WASHINGTON, D.C. 20004**

**A.J. KRAMER**                                                                                    Telephone (202) 208-7500
*Federal Public Defender*                                                                          FAX (202) 208-7515

October 2, 2020

Steven Wasserman
Assistant United States Attorney
U.S. Attorney's Office
555 Fourth St. NW
Washington DC 20053
    Re:    <u>United States v. Theodore Douglas</u>, 1:20-121-CJN

Dear Counsel:

    I am writing to make discovery requests in preparation for trial. Please be advised that we are continuing to exercise Mr. Douglas' rights under the Speedy Trial Act. For that reason, I ask that you provide Rule 16 materials and Brady materials as soon as you can. In addition, I am writing to request full DNA Discovery.

    If the materials requested in this letter exist but the Government declines to provide them based on a theory that they are not discoverable, please let me know of that position, so that I might file appropriate motions in a timely manner. If I do not receive a response regarding any requested materials, I will assume that those materials do not exist and will prepare the case accordingly. In connection with the following requests, I additionally request that the Government immediately take steps to preserve any and all evidence to which Mr. Douglas is entitled access under Rule 16, *Brady*, or any other applicable law.

    **I.**    **Results/Reports of Examinations and Tests**,

    Pursuant to Rule 16(a)(1)(D), please provide me with the results and reports relating to each and every individual scientific test or experiment performed in relation to the alleged incident. I understand that you are intending to have DNA testing performed. Please request the entire case file.

    With regard to any nuclear DNA testing conducted or contemplated in this case, I am requesting that you provide me with the following materials. Many, but not all, of these materials should be found in what is termed the "case" and "batch" files for each DNA test. By "case file," I refer to case notes, laboratory worksheets, data and reports as well as administrative documents such as memoranda requesting testing, correspondence, emails and chain of custody documentation; in other words, the entire case file.

(1) <u>Case file of DNA testing results</u>: Please provide a legible copy of the complete case file with all records pertaining to DNA testing in this case. For materials that are represented in any format other than black and white copies, please provide copies that are equivalent in content and quality (e.g., x-ray film copies of x-ray films, photographic quality copies of photographs, color copies of electropherograms, and CD copies of electronic data). The records requested include, but are not limited to, the following, even if located separate from the laboratory "case file."

    a. Hand written/typed bench notes, including but not limited to any descriptions of the status or quality of evidence upon arrival and throughout the testing procedure, any deviation or augmentation of Standard Operating Procedure for any reason including but not limited to irregularity of sample type or expected quantity of DNA;

    b. Extraction, quantitation, PCR, capillary electrophoresis, probabilistic genotyping, and final analysis worksheets;

    c. Worksheets and other notes used in mixture deconvolution and/or calculating statistics;

    d. Any printouts of electropherograms;

    e. Any printouts of electronic quantitation data;

    f. If probabilistic genotyping was used, all documentation associated with this analysis, including but not limited to all documents generated by either the probabilistic genotyping software or the analyst related to the probabilistic genotyping software;

    g. Records of any errors, discrepancies, or trouble-shooting that occurred during the testing in this case, as well as an explanation of actions taken to remedy the problems—such records should include documents maintained pursuant to FBI QAS Standards 3.2 and 14.1.

    h. Copies of phone and other communication logs reflecting conversations by laboratory personnel internally and externally with other people about testing in this case;

    i. Case notes maintained pursuant to FBI QAS Standard 11.1;

(2) <u>Data files for testing done in this case</u>: Please provide copies of all data files created and used in the course of performing DNA testing and subsequent analysis of DNA data in this case. These files should include all data necessary to (a) independently reanalyze the raw data, and (b) reconstruct the analysis performed in this case (as a noninclusive example, this should include ".fsa" files

or ".hid" files and ".ser" files). Please provide these data files on a CD on which the DNA examiner has written the date he or she copied the data onto the CD, the laboratory case number, and the DNA examiner's initials. Transmit the data intact, as originally collected. In addition, to the extent that this request pertains to commercially available software that was used <u>unmodified</u> in this case, you may respond to this request simply by indicating the name of the software item, the manufacturer, and the version used to create the data files you deliver. However, in the event that data files were created with internally created software or commercial software modified in any way, please provide either a copy of the modified software item or a detailed list of the changes or modifications that were made with regard to the software along with the data files. Data files should include, but are not limited to, the following:

   a. Project files (e.g. ".ser" files);

   b. Sample files (e.g. ".fsa" files, ".hid" files);

   c. Matrix files (including the data used to compile the matrix files);

   d. Analysis parameter files;

   e. Sample sheets;

   f. Injection lists;

   g. Log files; and

   h. Electronic data files produced by the STRmix® software or its operator for all rounds of testing, analysis, and reporting:
      i. Text files (.txt)
      ii. Data/input files (.csv)
      iii. PDF files (.pdf)
      iv. Settings files (.ini)

(3) <u>Source code of probabilistic genotyping software</u>: Please provide the source code for any probabilistic genotyping software utilized to interpret any DNA mixtures in this case.

(4) <u>Statistical information relied upon to interpret tests</u>: Please identify the statistical method used to calculate probabilities in this case as well as the source of any allele or genotype frequency data. In addition, please provide copies of the materials that were used or relied upon in performing any statistical analyses in this case. These materials should include, but are not limited to, the following:

   a. The complete STR database or databases on CD, in a format such that the multi-locus genotype is given for each sample tested;

    b. Copies of all documents describing the source or origin of samples in STR databases used, including documents regarding the method by which samples were collected, the background and/or characteristics of the individuals who were the sources of the samples, the choice of populations and sub-populations that were sampled, and the nature of the sampling procedure used to collect the samples;

    c. Copies of all documents generated by computer statistical programs (e.g., PopStats) used to aid statistical calculations in this case;

    d. Allelic frequency tables relied upon; and

    e. Computer data files relating to statistical analyses.

    f. Documentation of any substantive or clerical errors in the frequency databases used in this case, including but not limited to inaccurate genotypes, duplicate entries, inclusion of related individuals, along with an explanation of the impact of these errors.

    g. Disclosure and documentation regarding any "expert system" or probabilistic genotyping software used to assist at any stage of the interpretation or analysis either internally or by an external source.

(5) <u>Laboratory procedures relied upon when performing tests</u>: Please provide legible copies of all documents that were, or are claimed to have been, followed or relied upon in executing, interpreting, and/or reporting the DNA tests performed in the instant case. These materials should include, but are not limited to, the following:

    a. Standard operating procedures of the DNA testing laboratory, including but not limited to those maintained pursuant to FBI QAS Standard 9.1;

    b. User manual for any computer statistical program, database or expert system (e.g. PopStats, FST, STRMix) used to aid statistical calculations in this case;

    c. Quality assurance manuals, including those maintained pursuant to FBI QAS Standard 3.1; and

    d. Quality control manuals.

(6) <u>Documentation of laboratory and analyst expertise</u>: Please provide legible copies documenting how the testing laboratory meets scientific community standards and how laboratory personnel have been trained to conduct DNA testing. These materials should include, but are not limited to, the following:

  a. Copies of all licenses or other certificates of accreditation held by the DNA testing laboratory;

  b. Copies of all audit reports for the last five years relating to the DNA testing laboratory used in this case, including all audit documents retained pursuant to FBI QAS Standards 15.1-15.6;

  c. Copies of any contamination records kept by the laboratory—these materials should include (i) instances of reagent blanks and/or negative controls registering the presence of DNA and/or positive controls registering the presence of DNA other than that of the control DNA and (ii) all documents describing actions taken by the laboratory in response to contaminated controls or other forms of contamination;

  d. Copies of any control or sample discrepancy logs kept by the laboratory—these materials should include: (i) the case number, (ii) laboratory number, (iii) name of the analyst, (iv) extraction/concentration method, (v) description of the discrepancy, (vi) the cause of the discrepancy, and (vii) the corrective action taken.

  e. Copies of any proficiency tests that were taken by the persons who performed the DNA testing in this case—these materials should include (i) the complete proficiency test case file, (ii) computer data files, (iii) evaluations and/or reports by the testing agency; and (iv) records maintained pursuant to FBI QAS Standard 13.1;

  f. Current resumes, job descriptions, and descriptions of continuing professional training for all personnel involved in handling, conducting, and/or reviewing the biological material, serological testing, and DNA testing performed in this case, including all materials maintained pursuant to FBI QAS Standard 5.1;

  g. A list of the last ten cases at which the persons involved with testing in this case have testified.

(7) <u>Explanation of laboratory and computer instruments relied upon to perform tests</u>: Please provide legible copies of documentation about the equipment, reagents, and testing kits used to conduct DNA testing in this case. These materials should include, but are not limited to, the following:

  a. A brief description of the kinds of forensic work done in the laboratory and a diagram of the laboratory that clearly designates the work areas for evidence storage, DNA isolation, PCR processing, and DNA typing;

  b. A list of all the laboratory instruments used in the DNA testing in this

    case, including the name of the instrument, manufacturer, and version used;

c. A copy of the instructions provided by manufacturers of commercial tests kits, and protocols and manuals relating to the testing instruments (including user's manuals and machine-run specifications);

d. Documents regarding any modifications from the seller's specifications to any instrument (e.g. the ABI 3130) or test kit along with any documentation of what, if any, validation was performed regarding such modifications;

e. Documentation of the maintenance and calibration of laboratory equipment maintained per FBI QAS Standards 10.1-10.4;

f. Materials that document any trouble-shooting or changes that were made to the genetic analyzer instrument used in the instant case, including: (i) copies of any notes, or records of communications relating to trouble-shooting that had to be done on the instrument, including calls to technical support lines and visits to field technicians to repair the instrument; (ii) records of any changes that were made to the instrument in the course of testing samples in this case, including replacement of parts such as laser or CCD virtual camera; (iii) records of all computer resets or reboots that had to be done during the testing in the instant case, including soft resets, cold boots, and/or clear memory resets; and (iv) records of all incidents in which manual control was used to override genetic analyzer presets;

g. A list of all software programs, filters, and any "macros" used in the DNA testing in this case, including the name of the software program, manufacturer, and version used in this case—if modifications were made to commercial software's default settings or software was created in-house, these modifications and software should be provided;

h. A copy of the instructions provided by manufacturers of the software used in this case;

i. Copies of developmental validation studies pertaining to the STR DNA test performed in this case, as required by FBI QAS Guideline 8.2—these materials should include copies of laboratory notebooks, computer data files, unpublished scientific papers, and citations to published scientific papers;

j. Copies of any internal validation studies pertaining to the specific STR DNA test performed in this case, as required by FBI QAS Guideline 8.3—these materials should include copies of laboratory notebooks,

    computer data files, unpublished scientific papers, and citations to published scientific papers.

(8) Validation and other materials related to probabilistic genotyping
  a. All materials generated by DFS when performing validation studies concerning the STRmix® system, including, but not limited to:
    i. All records and electronic data used as "input" to the STRmix® system, including ModelMaker, and the software parameters used to analyze this data.
    ii. All records and electronic data generated by the STRmix® system and/or laboratory personnel during the course of the study.
    iii. Any analyses of (1.1 and 1.2 above), including bench notes, measurements, statistics, memos, summaries, conclusions, tables, graphics, and any resulting publications, presentations, and reports.
    iv. All communications relating to the design and results of the study, both within and external to the laboratory.
    v. All records of unexpected results, including false positives (false inclusions), false negatives (false exclusions), and the conditions under which the unexpected results were generated.
    vi. All records of software glitches, crashes, bugs, or errors encountered during the study.
    vii. Software version numbers of the components of the STRmix® system used for the study.
  b. All materials described in (a) that were produced by any other laboratory or entity concerning a validation study cited by DFS as describing the capabilities and/or justifying the use of the STRmix® software system for casework.
  c. Copies of all materials used for STRmix® training received or provided by DFS, including handouts, sample tests, presentations, and videos.
  d. Proficiency testing materials related to STRmix used by DFS, including materials used for testing, all materials submitted by a test-taker, and results of all tests taken.
  e. Source code for the version(s) of the STRmix® system used in the instant case as well as the versions that apply to (a, b, c, and d above), including all software dependencies such as third-party code libraries, toolboxes, plug-ins, and frameworks.
  f. Software engineering and development materials describing the development, deployment, and maintenance of the version(s) of the STRmix® software system used in the instant case as well as the versions that apply to (1, 2, 3, and 4 above) including the software engineering documents recommended by organizations such as the Institute of Electrical and Electronics Engineers (IEEE) or the International Organization for Standardization (ISO) such as:
    i. Software requirements specification documents.
    ii. Software architecture and algorithm design documents.
    iii. Software implementation documents.

      iv. Software deployment documents.
      v. Software maintenance documents.
      vi. All documents relating to the above software engineering and development materials including, but not limited to:
          1. Modifications, revisions, or updates to original documents.
          2. Software bug and issue tracking logs.
          3. Validation and testing documentation and reports for all levels of the software system hierarchy, including subroutines and software components, modules, and programs.
          4. Requests for changes to the system made by any designer, developer, or user of the system.
          5. Release, change, update, and upgrade descriptions and logs.

(9) <u>Information regarding evidence control procedures and current disposition of evidence</u>: Please provide legible copies of documentation about the laboratory control of evidence in this case. These materials should include, but are not limited to, the following:

    a. Copies of all chain of custody documents for each item of evidence subjected to DNA testing, starting with the first description or "log entry" for each item and continuing through to the current disposition of that item of evidence—such documentation should show (i) where and how the materials were collected, (ii) where and how the materials were stored (including temperature and type of container), (iii) the amount of evidence material which was consumed in testing, (iv) the amount of material which remains, and (v) where and how the remaining evidence is stored;

    b. Copies of the lab's internal operating procedures regarding evidence control pursuant to FBI QAS Standard 7.1.

(10)   <u>Information about DNA testing of other individuals:</u> Pursuant to Rule 16 and <u>Brady v. Maryland</u>, please provide all results, analyses, printouts, and raw data with respect to any DNA tests performed in this case on any other individual besides my client. If no testing was conducted on any other individual, please indicate whether a DNA sample was taken from any other individual, and why no DNA testing was conducted in that instance.

(11)   <u>Evidence of inconclusive DNA typing:</u> Pursuant to Rule 16 and <u>Brady v. Maryland</u>, for any inconclusive DNA typing results please provide a particularized explanation as to why that typing result was determined to be inconclusive (e.g. insufficient quantity of DNA, degraded DNA, inhibited PCR, etc.).

(12) <u>Serology</u>: Provide a complete copy of all laboratory documents relating to any

serological testing in the above captioned case, including but not limited to the following:

   a. Laboratory protocols including but not limited to any quantitative or qualititative standards or thresholds for determination of positive/negative/inconclusive results,

   b. Validation studies for any method used in this case including but not limited to any evaluation of the method's reliability, reproducibility, specificity, sensitivity and stability;

   c. Laboratory notes, including but not limited to documentation of time passed between commencement of the test and recording of results;

   d. Photographs, particularly of test results based on color change;

   e. Diagrams;

   f. Sketches;

   g. Bench notes;

   h. Final reports; and

   i. Draft reports.

   j. Proficiency tests, corrective actions, training records, continuing education and testimony monitoring documents for any serologist or technician involved in the instant case pursuant to SWGDAM Guidelines for the Collection and Serological Examination of Biological Evidence 13.1.

(13) In the event that this case involves a 'cold hit' please provide all records pertaining to any sample taken from the defendant for inclusion in a convicted offender genetic database, from the initial collection of said sample to its current disposition. These materials should include, but not be limited to, records of sample collection, chain of custody records, bench-notes for DNA testing (including printed electropherograms), electronic data, computer entry forms, Match Details Reports, corrective actions and any communications pertaining to these samples or searches involving these samples, including letters, emails, memos and records of telephone conversations.

   a. For testing done on all samples in this case (even if the case does not arise from a cold hit) that have been submitted to any of the database associated with the national CODIS DNA database system including the local database (LDIS),

       state database (SDIS) and national database (NDIS)

b. All interpretations made by any lab member including the analysts and CODIS administrators of any sample in this case that was subsequently uploaded to any of the listed databases;

c. All notes of any interpretation conducted by the lab kept either in the case file or with documents associated with the CODIS system including any CODIS search requests, spreadsheets or hand written documents associated with the CODIS system;

d. Match estimator results for all interpretations uploaded to any of the listed databases;

e. Any documents relating to candidate matches to any of the interpreted profiles from the Match Manager software, including any handwritten notes regarding interpretation or disposition of a candidate;

f. Long form candidate match reports for all candidates indicating the number of hits in any of the databases listed above;

g. All partially matching candidates returned via a search including those that are decided by the lab to be non-matching or no hit, even if the lab has described one of the candidates as a "hit."  This is an ongoing request because as the database grows the probability of obtaining more matches also grows.

h. Please provide FBI decision tree diagram for CODIS hits, any manuals regarding the use of any LDIS, SDIS and NDIS databases used in this case, training material, whether formal or informal, on the use of the LDIS, SDIS and NDIS databases including but not limited to those regarding data interpretation and criteria for upload.

Please provide the results/reports in sufficient time for me to incorporate the material into my trial preparation, including the possible need to seek alternate testing and/or the assistance of an expert to examine the material or to testify concerning the material.

## II.   Expert Notices

I request notice of any expert the government may call and a written summary of the expert testimony that the government intends to use during its case in chief at trial.  Please include

in the summary the expert witness's name, opinions, the bases and the reasons therefore, and the witness's qualifications.

### III.    *Brady* Requests

I hereby make a general request for exculpatory and impeachment information pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and its progeny. I also make the following specific requests pursuant to Brady and Whitaker v. United States, 408 A.2d 303 (D.C. 1979), and request that the government disclose such information in advance of trial so that the defense may investigate, if necessary, and incorporate into its preparation for trial.

a. the identities of and contact information for any witnesses who indicate that Mr. Douglas did not commit this offense, and the substance of those witnesses' statements, including witnesses who speak of Mr. Douglas' character;

b. the identities of and contact information for any witnesses who do not fully corroborate the government's case or who serve to impeach the government's evidence;

c. any information tending to show the unreliability of a government witness, or which would tend to discredit the testimony of a government witness;

d. any evidence of bias for the government or against Mr. Douglas for all civilian and police witnesses, pursuant to Giglio v. United States, 405 U.S. 150 (1972);

e. any evidence of bias or motive by any witnesses who have an immigration concern which the witness might believe or might have believed would be favorably affected by government action in this case, including but not limited to any conversations with any agents of the government, including police, victim advocates, or other staff of the U.S.A.O., regarding immigration status or obtaining immigration benefits, such as U, T, or S visas, through cooperation with law enforcement. See generally Delaware v. Van Arsdall, 475 U.S. 673 (1986). We request the dates and substances of all statements made by either government actors or witnesses regarding possible immigration issues or benefits.

f. any prior bad acts of government, civilian, and police witnesses, pursuant to Giles v. Maryland, 386 U.S. 66 (1976), including use of false documents for employment or immigration purposes;

g. any prior false reports pursuant to Lawrence v. United States, 482 A.2d 374 (D.C. 1984), including but not limited to prior complaints or reports to the police or enforcement agencies that did not result in conviction;

h. any prior inconsistent, non-corroborative, or other witness statement that will not reflect the witness's trial testimony;

i. all information in the government's possession indicating that the mental state or capacity of any government witness is below normal or is in any way abnormal;

j. any evidence that any government witness or informant was under the influence of any alcohol, narcotics, or any other substance at the time of the incident about which the witness will testify, or that the witness's faculties were impaired in any way;

k. information concerning any impeachable convictions of any government witnesses;

l. all information indicating that:[1]

   1. any government witness had a pending juvenile, immigration or criminal case at the time of the incident in the present case and/or has had any such cases since that date;

   2. any government witness had a pending school disciplinary proceedings at the time of the incident in the present case and/or has had any such cases since that date;

   3. any government witness had an arrest, guilty plea, trial, fact-finding hearing, sentencing or disposition pending at the time of Mr. Douglas' arrest and/or since that date;

   4. any government witness was committed or on probation, parole, or supervised release in any juvenile or adult case at the time of the incident in the present case or since that time;

   5. any government witness has now, or has had, any liberty interest that the witness might believe or might have believed would be favorably affected by government action; and,

   6. any deals, promises, or inducements that have been made to any government witness in exchange for their testimony;

m. any evidence or information that tends to even arguably link another individual to the crime charged;

n. any other information in the possession of the government that is favorable to the defense, whether or not admissible in court, and that is material to the issues of guilt and/or punishment.

---

[1] With respect to the below information, I hereby request docket numbers, dates, and jurisdictions for any and all requested cases.

With respect to any of the information requested above, I hereby request any reports, records or other documents containing such information that are in the custody, control or possession of the government. Possession of the government includes:

1. All members of the "prosecution team";
2. All employees of the United States Attorney's Office or the Department of Justice involved with the case;
3. All case files maintained by your office, not just concerning the instant case but any related case;
4. All criminal record databases to which you have access for criminal records concerning any potential witnesses in this case;
5. All relevant files from the FBI or ATF; and

The foregoing requests are made pursuant to Brady and its progeny.  If you disagree with the legality of any of these requests, please let me know in writing so that we can litigate the matter before the Court.

### IV.     Client's Record

Please provide a certified copy of the criminal record for our client.

### V.     Duty to Preserve Discoverable Evidence

"The duty to produce discoverable evidence entails the antecedent duty to preserve that evidence."  Walker v. United States, 649 A.2d 548, 553 (D.C. 1994) (citing Brown v. United States, 372 A.2d 557, 560 (D.C. 1977)). Accordingly, I remind you of the government's duty to preserve any evidence that is discoverable or that the government is obligated to disclose pursuant to Brady and its progeny, including, for example, any materials that might yield biological or chemical evidence.

### VI.     Continuing Duty to Disclose

The duty to disclose under Rule 16 and under Brady (and its progeny) is a continuing one and the requests stated above are therefore continuous, stretching until final disposition of this case.  Thank you for your prompt attention to these requests.

**Please let us know if you have any questions about any of our requests.  Please let me know if you are declining to provide any of the materials that we have requested so that I may litigate them in court.**

Sincerely,

/s/
Eugene Ohm
Attorney for Theodore Douglas