**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Criminal No. 20-cr-121 (CJN) |
| : | |
| **THEODORE DOUGLAS,** : | |
| : | |
| **Defendant.** : | |

## GOVERNMENT'S SURREPLY TO DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION MOTION TO SUPPRESS TANGIBLE EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's motion to suppress tangible evidence (ECF #S 31, 42). In support of this opposition motion, the government relies on the points and authorities set forth below, and any additional points and authorities, which may be cited at a hearing on this motion.

### PROCEDURAL BACKGROUND

On August 21, 2018, counsel for Defendant Douglas filed a boilerplate motion to suppress tangible evidence. In his motion, the Defendant made conclusory assertions regarding the illegality of the stop and eventual search of the defendant, which resulted in the seizure of a loaded firearm. On September 4, 2020, the government filed its opposition (ECF # 34) to Defendant Douglas's motion to suppress. Due to the lack of any application of the facts in the defendant's motion to the legal analysis included therein, the government was required to try to anticipate what specific conduct defense counsel would be arguing as violative of the Fourth Amendment.[1] On September 18, 2020, the Defendant filed his reply to the government's opposition, re-asserting

---

[1] Defense counsel had been provided the body worn camera footage and the police reports several months prior to the motions deadline. Accordingly, there is no basis for the defense to assert that they lacked sufficient information to file a proper motion.

1

some of the same legal arguments made in his initial motion, mischaracterizing facts readily observable in the BWC footage, and misconstruing the legal principles that apply to these facts.

Most notably, the defendant incorrectly asserts that: (1) the defendant was under arrest at the time he was handcuffed; (2) there was no reasonable articulable suspicion to conduct a *Terry* stop of the defendant; and (3) that the officer's frisk of the defendant exceeded the lawful scope of a *Terry* frisk for weapons.

## ARGUMENT

*A.    The Use of Handcuffs Did Not Convert Stop Into an Arrest.*

In his motion, the defendant conveniently ignored the multiple facts, which supported the two responding officers' placing the defendant in handcuffs.  As discussed in the government's opposition motion, these consisted of the observation by the UC of a hand-to-hand transaction of the backpack for money, the defendant's apparent attempts at quickly concealing the backpack from view, the defendant's presence in an area known for high crime, including firearms and narcotics offenses, and the fact that the backpack could easily have contained a firearm or other dangerous weapon.  *See* ECF # 34 at 5-7.  The defendant also ignores the additional factors courts have recognized as bearing on whether use of handcuffs converts an otherwise valid *Terry* stop into an arrest, including the demeanor of the officers, the number of officers involved in the stop, and whether any weapons were drawn by the officers.  The defendant attempts to obfuscate these factors by noting that a short time *after* the two responding officers had placed the defendant in handcuffs, other officers arrived on scene.  The defendant's argument ignores the fact that the other officers were involved in searching for the second suspect observed by the UC, and that the officers who initially approached Defendant Douglas could not have known the exact timing of when these other officers would be arriving in the area.  As it only takes a person a split-second to draw a

weapon like a gun or knife and kill or injure someone, the officers' action in handcuffing the defendant was reasonable.

The defendant next complains that there was an insufficient basis to stop him, as well as insufficient facts for the police to suspect that he was armed. ECF #42 at 6. Defense counsel asserts that the governments reliance, in part, on the defendant's presence in a high crime area such as the Fifth District to support the stop and frisk amounts to the government "advocating for a position that any individual stopped in the 5th (or 6th and 7th Districts) is inherently more suspicious than an individual stopped in [sic] First, Second, Third and Fourth District." *Id.* at 7. Defense counsel then proceeds to employ the oft-used dog whistle that the government's focus of prosecutorial resources in areas where violent crime and narcotics trafficking are the most frequent and deleterious is racist. ECF #42 at 7, n.1. These arguments ignore well-established precedent that facts such as those presented in the instant case, **in combination**-- observation of a hand-to-hand transaction, nervous behavior, acts of concealment, and presence in a high crime area are sufficient to justify a *Terry* stop and frisk. *See United States v. Lovelace,* 357 F. Supp. 2d 39, 43-44 (D.D.C. 2004); *See Minnesota v. Dickerson,* 508 U.S. 366, 368-369 (1993) (upholding *Terry* stop and frisk where defendant was observed exiting known "crack-house" and engaged in evasive behavior upon noticing police presence).

      B.    *The Frisk of the Defendant Did Not Exceed the Scope Lawful Terry Frisk.*

Officer Poupart's frisk of the exterior of Defendant Douglas's jacket was within the scope of a lawful frisk under *Terry.* As can be plainly observed on the BWC footage, Officer Poupart is feeling through the defendant's jacket *and* the backpack, where it is clear he is able to feel the presence of a large metal object. *See* ECF #34, Exhibit A at 19:03:00. Officer Poupart testified at the preliminary hearing that he immediately recognized this item as a firearm. ECF #34, Exhibit

B at p. 16; lines 12-21. Contrary to the defendant's claim, there was no improper manipulation of Defendant's jacket or the backpack of the type invalidated by the U.S. Supreme Court in *Minnesota v. Dickerson.* Defendant's reliance on *Dickerson* is inapposite because in that case, the frisk by the officer revealed that what he was feeling could not have been a weapon, and thus, the Court ruled that any further manipulation of the accused's pocket to determine that the concealed item was crack-cocaine exceeded a permissible *Terry* frisk for weapons. *Dickerson,* 508 U.S. at 379. Furthermore, the Defendant's claim that the frisk employed by Officer Poupart was improper "manipulation" misconstrues the permissible extent of a frisk and creates an untenable standard upon which to evaluate such frisks. The manner in which a frisk is conducted is necessarily going to be impacted by the nature of the item an officer is touching. Conducting a frisk on a pocket to a light jacket is likely to require less manipulation in order to determine if a weapon is present than if an officer is touching a backpack located underneath a jacket. The defendant appears to be advocating for restrictions, without citation to any authority, on the manner in which an officer touches the area to be searched without regard to the nature of the item being frisked. Under the defendant's view, it would appear that anything more than simply placing the palm of one's hand on an item constitutes an impermissible "manipulation." In fact, the BWC footage establishes that Officer Poupart used his thumb and other fingers to feel through the jacket and backpack. ECF #34, Exhibit A at 19:03:00. There is nothing unreasonable about the manner in which Officer Poupart conducted this frisk in light of the nature of the area he was frisking. "Under the 'plain feel doctrine,' a weapon discovered during a frisk may be seized if its 'contour or mass makes its identity immediately apparent.'" *United States v. Spriggs,* No. 09-0361, 2010 WL 917709, *2 (D. Md. March 10, 2010) (quoting *Minnesota v. Dickerson,* 508 U.S. 366, 373–75 (1993)). Since Officer Poupart had probable cause to arrest the defendant and seize the forearm upon recognizing

it as such, it is of no moment that he then removed the defendant's jacket and continued to feel for the location of the gun inside of the backpack.[2]

Finally, the defendant's assertion that Officer Poupart's request for consent to search after he conducted the frisk and the fact that he later asked permission over the radio to conduct the search of the backpack does not undermine the probable cause that arose to arrest the defendant and search the backpack after he recognized the items as a firearm during the earlier frisk. Officer Poupart's testimony regarding his recognition of the gun during the lawful frisk is corroborated by the BWC footage, which clearly shows an item consistent with a firearm.

## **CONCLUSION**

**WHEREFORE** for the reasons stated above the United States respectfully submits that the defendant's motion to suppress tangible evidence should be denied.

                                      Respectfully submitted,

                                      MICHAEL R. SHERWIN
                                      United States Attorney
                                      N.Y.S. Bar No. 4444188

By:            /S/
                            STEVEN B. WASSERMAN
                            D.C. Bar No. 453251
                            Assistant United States Attorney
                            555 Fourth Street, N.W., Fourth Floor
                            Washington, D.C. 20530
                            Telephone: (202) 252-7719
                            E-mail: steve.wasserman@usdoj.gov

---

[2] Even had Officer Poupart not been able to determine through the frisk over the defendant's jacket that the item was a gun or had first chosen to remove the jacket to gain access to the backpack, *Terry* would have supported Officer Poupart gaining direct access to the backpack, so that he could conduct the frisk. The defendant was wearing the backpack and it matters not that it was underneath his jacket, since removing the jacket only revealed the backpack in order to make it accessible for a permissible frisk.

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a copy of the foregoing was served via ECF on counsel for Defendant, on this 15th day of October 2020.

                                                                            /S/
                                                 Steven B. Wasserman
                                                 Assistant United States Attorney