UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 20-cr-121 (CJN) |
| : | |
| THEODORE DOUGLAS and : | |
| TAVONTE DOUGLAS, : | |
| : | |
| Defendant. : | |

### GOVERNMENT'S SUPPLEMENT TO THE OPPOSITION TO DEFENDANTS' MOTIONs TO SUPPRESS TANGIBLE IDENTIFICATION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplemental brief in opposition to the defendants' motion to suppress identification (ECF #s 30, 33). In support of this opposition motion, the government relies on the points and authorities set forth below, and any additional points and authorities, which may be cited at a hearing on this motion.

### PROCEDURAL BACKGROUND

On October 20, 2020, an evidentiary hearing in this matter was held on the motions to suppress identification testimony by Defendants Theodore Douglas and Tavonte Williams. The government called two witnesses, Metropolitan Police Department (MPD) Officers Isaac Jackson and Maxwell Poupart, and Defendant Douglas called MPD Officer Brianna Taylor. After completion of the hearing, this Court ordered the parties to each file a supplemental brief to their respective pleadings on the motion to suppress identification in order to summarize the testimony adduced at the hearing and to synthesize this testimony with the legal arguments set forth in the previous filings.

1

## **THE WITNESS TESTIMONY AT THE HEARING**

*Testimony of Officer Isaac Jackson*

Officer Isaac Jackson testified that he has been a police officer with MPD for 20 years and had been assigned to the Narcotics Enforcement Unit, Narcotics and Special Investigations Division (NSID) for approximately 10 years. *10-20-20 Motion Hearing Transcript* ("Tr.") at 8. Ofc. Jackson further testified that prior to being assigned to NSID, he worked as a police officer in the Sixth Police District, where he worked on primarily narcotics investigation and prostitution cases. *Id.* at 9. Ofc. Jackson stated that in his current assignment with NSID he works on narcotics investigations. *Id.* Ofc. Jackson testified that during the course of his career he has received training in narcotics investigations from the Drug Enforcement Administration, as well as annual training to remain current with narcotics and firearms investigations. *Id.* Ofc. Jackson also testified that he has received "on-the-job" training. *Id.* Ofc. Jackson advised that during this career he has worked as an observation post ("OP") officer "more than 500" times. *Id.* at 12. He testified that it was important for him to provide an accurate lookout description to the arrest team to ensure that the correct individual is stopped. Ofc. Jackson further advised that due to the need for the arrest team to act quickly to prevent the suspect from fleeing the area, he would frequently need to supplement his initial lookout description with additional details to assist the arrest team in stopping a suspect. *Id.* at 14.

Ofc. Jackson advised that his OP vehicle was a sedan, that the windows were not tinted, and that he was seated in the driver's seat. He also stated that he was not using binoculars or other visual aids, that he did not have a prescription for eyeglasses or contact lenses, and that he was not experiencing any problems with his vision on April 22, 2020. *Id.* at 24. Ofc. Jackson drew a green circle on Government's Exhibit 2 to identify the location of his OP vehicle in the 2300 block of

15th Street, N.E., which was visible on Ofc. King's body worn camera (BWC) shortly after Jackson observed the book bag exchange between the two defendants. *Id.* at 24-25; Attachment A (Govt. Ex 2). Ofc. Jackson advised that the vantage point from where Govt. Ex. 2 was taken was located in the walkway where he observed the hand-to-hand exchange between the defendants. He also stated that the location of his vehicle as depicted in Govt. Ex. 2 was where the OP vehicle was located at the time he made his observations of the book bag exchange. *Id.* at 26. Ofc. Jackson was also shown Government's Exhibit 1A, which is an overhead view of the 2300 block of 15th Street, N.E., and the walkway where the book bag exchange between the defendants occurred. Ofc. Jackson made a green circle on Govt. Ex. 1A to mark the approximate location of his vehicle at the time he made his observations. *Id.* at 26-27; Attachment B (Govt. Ex. 1A). Ofc. Jackson also marked with a green circle on Govt. Ex 1B the approximate location of where he observed the exchange occur. *Id.* at 36-37; Attachment C (Exhibit 1B). Ofc. Jackson estimated that he was approximately 15 yards away from where the book bag exchange occurred. *Id.* at 70.

Ofc. Jackson stated that shortly before 3:00 p.m., he observed an individual standing in the walkway with one or two other people, when he saw another male appear and hand one of the individuals in the walkway a "book bag." Ofc. Jackson stated he observed the individual who received the book bag take off his jacket, place book bag on his person by putting the straps over his shoulders, and put his jacket back on over the top of the book bag. *Id.* at 30, 103. Ofc. Jackson testified that the individual who received the book bag handed the individual some money. Ofc. Jackson advised that he believed the item handed by the individual who received the book bag to the individual who gave it to him was money, due to the color of the item and how the person "cuffed" his hand. Ofc. Jackson testified that he could not be certain that the item was U.S. currency. *Id.* at 30-31.

Ofc. Jackson stated that at the time of the exchange of the book bag, he was able to see Defendant Douglas' back and was able to observe the left side of Defendant Williams.[1]  He testified that when he observed the exchange of the suspected currency, he was able to see Douglas's right side and Williams' left side.  *Id.* at 31-32, 95-96, 116.  Ofc. Jackson estimated that the exchange between both defendants lasted approximately 20 to 30 seconds.  *Id.* at 37.  Officer Jackson confirmed that there was nothing obstructing his view of the exchange, and nothing that distracted his attention away from his observation of the exchange.  *Id.* at 37, 62-63, 124-125.  Ofc. Jackson testified that the only individuals he observed engaging in the exchange of the book bag and money were the two defendants.  *Id.* at 38.  Ofc. Jackson further testified that when he broadcast his initial lookout description, there were no obstructions of the two males he observed engage in the exchange.  *Id.* at 40.  He also advised that prior to the arrest team moving into the area; both defendants were walking in and out of his sight line while his OP vehicle was still parked in the location where he observed the exchange.  *Id.* at 43.  Ofc. Jackson testified that eventually both defendants walked towards the parking lot in the direction of Montana Avenue, that he moved his vehicle from where it was located, and that both defendants were out of his sight when the arrest team stopped them.  *Id.* at 43-44, 51, 101, 210.

Ofc. Jackson testified that in his initial lookout for Defendant Williams he had not mentioned the orange hood worn by Williams, because his initial concern was the lookout for

---

[1] Officer Jackson provided a detailed description of each defendant in the radio run played at the hearing and admitted as Government's Exhibit 3.  Ofc. Jackson's testimony was consistent with the lookout description he provided over the radio after he observed the exchange.  Tr. at 31-32.  It is also clear from the BWC video of Ofc. Poupart (Govt. Ex. 4 and 4A (Attachment D)) that both defendants matched the lookout description.  Further, Ofc. Jackson identified both defendants from Govt. Ex. 4A as the individuals he observed engage in the exchange of the book bag for money.  *Id.* at 46-48.  This radio transmission was included as Exhibit A to the government's opposition to the defendants' motion to suppress identification (ECF #35).

Defendant Douglas and getting him stopped by the arrest team as quickly as possible. Ofc. Jackson further stated that he was concerned about getting Douglas stopped because he was in possession of the book bag. *Id.* at 44, 126. Ofc. Jackson stated, as confirmed by the radio run (Govt. Ex. 3), that he supplemented his lookout description of Williams in two additional radio transmissions after the initial lookout. *Id.* at 126-127. Jackson also confirmed that nobody told him Williams was wearing an orange hood, and that it was the result of his own observations. *Id.* at 44. Ofc. Jackson stated that after he learned that the arrest team had two people in custody, he drove to the parking lot where both defendants were detained in order to see if he could make a positive identification. *Id.* at 52-53. Ofc. Jackson stated that he was in his vehicle, which was parked at the mouth of the parking lot off Montana Avenue, and that he was approximately 15 to 20 yards from where both defendants were standing when he made his positive identification. *Id.* at 53, 73. He further stated that there was nothing obstructing his view of the defendants at the time he was making his identification, and that he had no doubts about the accuracy of his identifications of either defendant as the individuals involved in the book bag exchange. *Id.* at 53-54, 129-130. Ofc. Jackson testified that while he did get a "good look" at the faces of the defendants, he made his identifications based primarily on their clothing match and the hair. *Id.* at 78, 96-97. Ofc. Jackson testified that nobody did or said anything to suggest to him who he should identify.[2] *Id.* at 55. He also advised that while there were other individuals who had been in the immediate vicinity of the walkway during the exchange, none of those individuals matched the descriptions of either Defendants Douglas or Williams. *Id.* at 127-128, 130. Ofc. Jackson was also able to identify both defendants in court during the motions hearing. *Id.* at 55-56.

---

[2] Ofc. Jackson's positive identification was recorded on the radio run (Govt. Ex. 3 at 00:10:28).

5

Ofc. Jackson testified that in the 500 observation post cases he has worked on, there were only a small number of occasions when the arrest team had stopped the wrong person. *Id.* at 85. Ofc. Jackson further stated that he had no problem failing to make a positive identification if he believed that the individual stopped was not actually the person he observed engage in the suspected criminal activity. *Id.* at 130.

## ARGUMENT

The testimony by Ofc. Jackson establishes that the identification procedure used was both reliable and not unduly suggestive. Applying the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 199 (1972) to evaluate the reliability of an identification, Ofc. Jackson's testimony established that he had sufficient opportunity to view the defendants at the time of the exchange. Specifically, Jackson testified that there were no obstructions to his view of the defendants during the exchange, and he had the opportunity to observe both defendants during the exchange of the book bag as well as for a period after the exchange was completed. Further, Jackson testified that there were no obstructions of his view during the identification procedure itself. He also testified that his attention was focused on both defendants during the exchange. Further, Ofc. Jackson's descriptions of each defendant were highly accurate as confirmed by the radio run (Govt. Ex. 3) and the BWC of Ofc. Poupart (Govt. Ex. 4 and 4A). Ofc. Jackson further testified that he had no doubt regarding the accuracy of his identification, and it was clear from the radio run and the BWC footage that the identification occurred less than five minutes after Ofc. Jackson observed the exchange of the book bag. In addition, Ofc. Jackson is a trained law enforcement officer who is "expert" in observing criminals, which courts have noted is a factor that bolsters the reliability of the identification. *United States v. Dring*, 930 F.2d 687, 693 (9th Cir. 1991), *cert. denied*, 506 U.S. 836 (1992); *Singleton v. United States*, 702 F.2d 1159, 1165-66 (D.C. Cir. 1983).

There was also no testimony or other evidence adduced at the hearing that established that the identification procedure "was so unnecessarily suggestive and conducive to irreparable mistaken identification that [defendant] . . . was denied due process of law." *Russell v. United States*, 408 F.2d 1280, 1284 (D.C. Cir. 1968); *cert. denied*, 395 U.S. 928 (1969) (internal quotations and citations omitted).  Ofc. Jackson's testimony, as well as the radio run and BWC footage, established that Ofc. Jackson's identifications were based upon his own, independent observations, and not the result of any suggestive behavior by the officers involved in the stop of the defendants.

Finally, as set forth in the government's initial opposition (ECF #35 at 10-12) to the defendants' motion to suppress identifications and the evidence adduced at the hearing, the initial stops of each defendant were supported by reasonable suspicion, and therefore, the identifications were not the result of an illegal stop or arrest.

## CONCLUSION

**WHEREFORE** for the reasons stated above the United States respectfully submits that the defendants' motions to suppress identifications should be denied.

          Respectfully submitted,

          MICHAEL R. SHERWIN
          United States Attorney
          N.Y.S. Bar No. 4444188

By:      /S/
          STEVEN B. WASSERMAN
          D.C. Bar No. 453251
          Assistant United States Attorney
          555 Fourth Street, N.W., Fourth Floor
          Washington, D.C. 20530
          Telephone: (202) 252-7719
          E-mail: steve.wasserman@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a copy of the foregoing was served via ECF on counsel for Defendant, on this 3rd day of November 2020.

                                                     /S/
                                      Steven B. Wasserman
                                      Assistant United States Attorney