UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 20-121 (CJN) |
| | : | |
| v. | : | |
| | : | |
| THEODORE DOUGLAS, | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its Attorney, the United States Attorney for the District of Columbia, respectfully recommends that the Court sentence the defendant a period of incarceration at the low end of the applicable guidelines range. In support of its recommendation, the United States relies on the following points and authorities, and any other such points and authorities that it may cite at a hearing.

### BACKGROUND

1. The defendant acknowledged as part of his guilty plea in this case that on April 22, 2020, at approximately 2:59 p.m., members of the Metropolitan Police Department (MPD), Narcotics and Special Investigations Division (NSID), were conducting an observation post in the 2300 block of 15th Street, Northeast, Washington, D.C. An undercover officer (UC) observed an individual, later identified as Theodore Douglas (Defendant Douglas), standing in the walkway between 2315 and 2317 15th Street, Northeast. Defendant Douglas acknowledged that the UC would testify that an individual, later identified as Tavonte Williams (Defendant Williams), approached Defendant Douglas and handed Defendant Douglas a black bag with shoulder straps.

1

Defendant Douglas put this black bag onto his back, and then put his blue jacket on over the black bag. The UC then observed Douglas hand Williams an unidentified object.

2. The UC alerted other officers in the area and officers moved in to stop both Defendants Douglas and Williams. Both Defendants Douglas and Williams were stopped by separate officers and both defendants were later positively identified by the UC as the individuals observed exchanging the backpack and unidentified object. Defendant Douglas was found to be wearing a backpack under his jacket, as observed by the UC. The officer who stopped Defendant Douglas then conducted an external frisk of the backpack worn by Defendant Douglas, and a later search of the backpack revealed the presence of a firearm inside the backpack.

3. Defendant Douglas was then placed under arrest. The firearm that was recovered from the backpack was determined to be a Sig Sauer, model P320, .40 caliber semiautomatic handgun. When the firearm was recovered, it was loaded with one (1) round in the chamber and twelve (12) rounds in a thirteen (13) round capacity magazine. The stop and search of Defendant Douglas was recorded on police body worn camera. The defendant admitted that at the time he possessed the loaded .40 caliber semi-automatic pistol, he had previously been convicted of an offense for which the penalty was greater than one year of imprisonment, to wit, Carrying a Handgun in the Circuit Court for Prince George's County, Maryland, Criminal Case Number CT090351X, and Unlawful Possession of a Firearm in D.C. Superior Court, Criminal Case No. 2013-CF1-006028. The defendant also admitted that at the time he possessed the .40 caliber semi-automatic pistol, he was aware that he had a previous conviction for an offense for which the penalty was greater than one year of imprisonment, that the government's evidence at trial would establish that the Sig Sauer .40 caliber model P320 semi-automatic pistol and .40 caliber

ammunition had been shipped or transported from one state to another, and that the firearm was capable of expelling a projectile by means of an explosive.

4. On March 17, 2021, the defendant entered a plea of guilty to count two of the indictment, which charged him with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The statutory penalty for the offense of conviction is a maximum term of imprisonment of 10 years, a fine of not more than $250,000, and a term of supervised release of not more than 3 years.

## SENTENCING GUIDELINES

5. The government agrees with the Pre-Sentence Report ("PSR") calculation of the defendant's criminal history as falling within Criminal History Category III. PSR ¶ 30. The government further agrees that the base offense level is 14, however, the government objects to the application of a 4-level enhancement for an obliterated serial number pursuant to U.S.S.G. § 2K2.1(b)(4). PSR ¶ 15-16. As this Court is aware, the plea negotiations in this matter resulted in the parties agreeing not to include the sentencing enhancement as part of the plea, because the facts concerning whether the serial number had been obliterated or altered were ambiguous, and the D.C. Circuit has not specifically decided the applicability of the enhancement under the factual circumstances presented by the instant case. Specifically, whether the enhancement applies where the damage to the serial number does not render it illegible to the naked eye. Furthermore, although U.S. Probation cited in the PSR to cases where section 2K2.1(b)(4) was applied to serial numbers that had been defaced, all but one of those cases involved alterations that made the serial number illegible to the naked eye. United States v. Harris, 720 F.3d 499, 503 (4th Cir. 2013)("[The

weapon] had gouges and scratches across the serial number that precluded [the district court] from reading the serial number correctly, even as it attempted to do so 'carefully.'"); United States v. Justice, 679 F.3d 1251, 1254 (10th Cir. 2012)(serial number was only made legible after laboratory chemical processing); United States v. Jones, 643 F.3d 257, 258 (8th Cir. 2011)(part of serial number was "filed off" and not legible to the naked eye); United States v. Carter, 421 F.3d 909, 910 (9th Cir. 2005)(noting that serial number was "not decipherable to the naked eye…"). Furthermore, the Sixth Circuit has recently held in United States v. Sands, 948 F.3d 709, 711 (6th Cir. 2020) that the sentencing enhancement for an obliterated serial number under U.S.S.G. § 2K2.1(b)(4) does not apply to serial number that has scratches but was still legible to the naked eye).    In light of the lack of guidance from the D.C. Circuit concerning the applicability of section 2K2.1(b)(4) under the facts of the attempted obliteration/alteration to the serial number in this case, the plea negotiations by the parties which excluded application of the enhancement, and the absence of evidence in the record establishing the extent of the defacement to the serial number of the firearm possessed by the defendant, the government submits that the Court should not apply the enhancement pursuant to section 2K2.1(b)(4).

6.     The government does not oppose a two-level reduction for acceptance of responsibility.   Accordingly, the government submits that the total offense level should be 12. Based upon a total offense level of 12 and a Criminal History Category of III, the Sentencing Guidelines range of imprisonment is 15 months to 21 months.    As a result, the government also objects to the PSR's calculation of the fine range (PSR ¶ 88) and submits that the proper fine range is $5,500 to $55,000.

4

## LEGAL PRINCIPLES

7. When determining the appropriate sentence, the district court should consider all the applicable factors set forth in Title 18, United States Code, Section 3553(a). See United States v. Gall, 128 S. Ct. 586, 596 (2007). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). United States v. Rita, 127 S. Ct. 2456, 2463-65 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the kinds of sentences available; (4) the sentencing range established by the Sentencing Guidelines; (5) any related Sentencing Commission policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need for restitution to any victims.

8. In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 542 U.S. 296 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory. Booker, 543 U.S. at 245. Nonetheless, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See Gall, 128 S. Ct. at 598 ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark"). The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See

5

United States v. Rita, 127 S. Ct. 2456, 2464 (2007).  See also United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases").  In addition, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns."  Booker, 543 U.S. at 264 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

9. The Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a).  Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by Section 3553(a)(1).  The Guidelines themselves thus seek to implement — in a fair and uniform way — the offense specific characteristics that, themselves, comprise the "individualized assessment" the Supreme Court commends in Gall.  See Gall, 128 S. Ct. at 597.

**SENTENCING RECOMMENDATION**

10. The Government submits that a sentence at the low end of the applicable guidelines range represents a sentence that meets the sentencing criteria set forth in 18 U.S.C. § 3553(a). First, the defendant's conduct in this case was extremely dangerous.  The defendant possessed a loaded firearm while walking through the streets of Washington, D.C.  The toll that gun violence has taken on our community and communities around the country is well documented.  This is

also a fact that the defendant has experienced first-hand, having claimed to have been traumatized himself by friends who have been killed by gun violence. PSR ¶ 43. There is simply no justifiable reason for the defendant, a convicted felon, to be in possession of a firearm. An additional aggravating factor is that the defendant has two prior convictions for possessing firearms. Further, a search of the defendant's cellphone and iCloud account revealed that the defendant's illegal possession of firearms in this instance was not an isolated incident, and that he has actively sought to purchase illegal firearms. See Government's Motion to Admit Other Crimes Evidence Pursuant to Federal Rule of Evidence 404(b), ECF #28 at p. 6-18.

11. At 30 years old, the defendant now has three felony firearms convictions (including the instant offense). In addition, at the time the defendant committed the instant gun offense he was on supervised release and had been a fugitive from justice since 2015, having failed to appear in Superior Court for a then pending felony drug trafficking offense.[1] The defendant was also on supervised release from a 2013 firearms conviction at the time he committed the instant offense, and was non-compliant with his supervised release conditions, including being a loss of contact. PSR ¶ 27. Finally, the defendant also has a significant history of arrests, including for multiple drug trafficking offenses, assaultive conduct, and theft. PSR ¶ 31-36. This pattern of behavior is indicative of an individual who is not amenable to court supervision, presents a continuing risk to reoffend, and therefore presents a continued threat to the safety of the community.

12. In addition to the defendant's criminal behavior, he does not appear to have a stable history of employment, nor has he attained vocational training or additional education to enhance

---

[1] The pending Superior Court drug charge against the defendant was dismissed in February of 2021, and as part of the plea agreement in the instant case, the government has agreed not to reinstate these charges.

his employability. These are also factors that the government submits increase the likelihood that the defendant will reoffend. The defendant's pattern of criminal behavior demonstrates that he remains a danger to the community, thereby justifying a significant period of incarceration in order to protect the community, punish him for his criminal conduct, deter others from committing similar offenses, while still affording the defendant an opportunity at rehabilitation. The government submits that a sentence at the low end of the applicable guidelines range serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

**WHEREFORE**, for the foregoing reasons, the United States respectfully recommends that: (i) the Court impose a sentence at the low end of the applicable the guidelines range; and (ii) impose a period of 3 years of supervised release.

Respectfully Submitted,

CHANNING D. PHIILIPS
ACTINB UNITED STATES ATTORNEY
D.C. Bar No. 415793

BY:   /s/ *Steven B. Wasserman*
STEVEN B. WASSERMAN
Assistant United States Attorney
D.C. Bar No. 453251
Violent Crime and Narcotics Trafficking Section
555 4th Street, N.W., 4th Floor
Washington, D.C. 20530
(202) 252-7719
Steve.Wasserman@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel via the electronic case filing system, this 26th day of April 2021.

                                            /s/ *Steven B. Wasserman*
                                     STEVEN B. WASSERMAN
                                     Assistant United States Attorney