1

```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,
                                           CR Action
             Plaintiff,                    No. 1:20-121

     vs.                                   Washington, DC
                                           January 4, 2021
TAVONTE WILLIAMS AND,
THEODORE B. DOUGLAS                        10:20 a.m.
             Defendants.
_____/


              TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
                BEFORE THE HONORABLE CARL J. NICHOLS
                    UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff:      STEVEN B. WASSERMAN
                          U.S. ATTORNEY'S OFFICE FOR D.C.
                          555 Fourth Street, NW
                          Washington, DC 20530
                          (202) 252-7719

For T. Williams:        JOHN PETER MARSTON
                          FOLEY HOAG, LLP
                          1717 K Street, NW
                          Washington, DC 20006
                          (202) 261-7321


For T. Douglas:         EUGENE OHM
                          FEDERAL PUBLIC DEFENDER FOR D.C.
                          625 Indiana Avenue, NW, Suite 550
                          Washington, DC 20004
                          (202) 208-7500


Reported By:     LORRAINE T. HERMAN, RPR, CRC
                 Official Court Reporter
                 U.S. District & Bankruptcy Courts
                 333 Constitution Avenue, NW
                 Room 6720
                 Washington, DC 20001
```

**P R O C E E D I N G S**

THE COURT: Good morning. This is Judge Nichols joining. Assuming everyone can hear me, Ms. Lesley, could you please call this matter?

COURTROOM DEPUTY: Yes, Your Honor.

This is criminal case year 2020-121, United States of America versus Tavonte Williams, Defendant number 1 and Theodore B. Douglas, Defendant number 2, both who are present on the phone. Pre-trial officer is John Cotes.

Counsel, please introduce yourselves for the record beginning with the government.

MR. WASSERMAN: Good morning, Your Honor. Steven Wasserman for the United States.

THE COURT: Good morning, Mr. Wasserman.

MR. MARSTON: Good morning, John Marston for Mr. Williams.

THE COURT: Good morning, Mr. Marston.

MR. OHM: Eugene Ohm on behalf of Theodore Douglas.

THE COURT: Good morning, Mr. Ohm. Anyone else on the call this morning?

THE DEFENDANT: Good morning, Tavonte Williams.

THE COURT: Yes. Good morning, Mr. Williams and Mr. Douglas as well. I note both defendants are present by phone as well. Other than Mr. Williams and Mr. Douglas,

1     anyone else on the phone, Counsel?

2             [No response]

3             Let me just do a few preliminary things and then I
4     will turn it over to the parties to ask where things stand.

5             First, we are continuing to operate under Chief
6     Judge Howell's standing orders relating to the pandemic, and
7     we are therefore participating this morning by phone,
8     whereas, we normally would be participating in person.  I
9     certainly believe it is appropriate, but I just want to
10    confirm that the Government and Defendants all consent to
11    proceeding this morning by phone.

12            MR. WASSERMAN:  This is Steven Wasserman for the
13    Government.  That's fine for the Government, Your Honor.

14            MR. MARSTON:  John Marston for Mr. Williams, we
15    consent.

16            MR. OHM:  Eugene Ohm.  I consent as well, Your
17    Honor.  Okay.  Second, pursuant to the recently-enacted due
18    process protections act, I order all government counsel to
19    review their disclosure obligations under Brady versus
20    Maryland and its progeny as set forth in local Criminal Rule
21    5.1 and to comply with those provisions.  Failure to comply
22    could result in dismissal of the indictment or information,
23    dismissal of individual charges, exclusion of government
24    evidence and witnesses, continuances, bar discipline or any
25    other remedy that is just under the circumstances, I will be

1	entering a written order to that effect as well.

2	Having done those preliminary steps, obviously I
3	issued an opinion on various pre-trial motions before the
4	holidays.  So in light of that opinion, and more generally,
5	I just like to understand from the parties' perspective
6	where we are.

7	Mr. Wassermanm, why don't we begin with you and
8	then I would like to hear from defense counsel.

9	MR. WASSERMAN:  Yes, Your Honor.  Steven Wasserman
10	for the Government.

11	I have inquired of both counsel whether either
12	Defendant would be interested in a plea, and I have been
13	informed by Mr. Marston that Mr. Williams is not interested
14	in a plea at this time and would like a trial date.  I have
15	not yet heard back from Mr. Ohm concerning Mr. Douglas'
16	position on that.

17	I have spoken with Mr. Ohm about a potential plea
18	offer, which was, essentially, to Count 1 of the indictment
19	and with the Government agreeing to allocute at the low end
20	of the guideline range.  We would also be willing to dismiss
21	the Superior Court case that Mr. Douglas has, but I have not
22	formalized that plea offer, and have not heard back from Mr.
23	Ohm at this point about whether his client would be
24	interested in that plea.

25	THE COURT:  Thank you.

1                    Mr. Marston, why don't we just turn to you.
2     Anything you would like to add to what Mr. Wasserman has
3     said?
4              MR. MARSTON:  No, Your Honor, that's correct.
5     Mr. Williams would request a trial date.
6              THE COURT:  Okay.  Mr. Ohm, where do things stand
7     with Mr. Douglas?
8              MR. OHM:  Your Honor, if Mr. Wasserman's plea
9     offer is contingent upon waiving appellate rights, which
10    typically in these situations they are, I believe he is
11    rejecting the plea offer and we want to proceed to trial.
12             THE COURT:  I apologize, Mr. Ohm, but I don't know
13    if you your connection is not great or mine but I lost part
14    of what you are saying.  Perhaps you could speak more
15    directly into the phone and perhaps go a little slower.
16             MR. OHM:  Sure.  Can you hear me now, Your Honor?
17    I apologize.
18             THE COURT:  Yes.  Thank you.
19             MR. OHM:  Assuming that the Government's plea
20    offer is contingent upon waiving appellate rights,
21    Mr. Douglas would reject that plea offer.
22             THE COURT:  Understood.  Mr. Wasserman, I don't
23    think we need to get into the back-and-forth on the
24    specifics of the plea offer.  It sounds like you may or may
25    not have a plea.  In light of that, and in light of where

1     Mr. Williams is, it seems to me that we should be thinking
2     about a trial date.
3             As everyone can imagine, in light of the pandemic,
4     getting a trial on the calendar has been a bit complicated.
5     And it requires us to do some work beyond merely looking at
6     my courtroom schedule and schedule of counsel.
7             Ms. Lesley, do you have a sense or do we need to
8     do some additional work on our own about when we could
9     conduct a trial?  I suppose I should ask the question first
10    of the parties.  I think we have had this conversation
11    before to some extent at least, but approximately how long
12    do the parties believe a trial in this matter would last?  I
13    will start with you, Mr. Wasserman.
14            MR. WASSERMAN:  Yes, Your Honor.  Steven
15    Wasserman.  I would expect without stipulations to some of
16    the evidence, I think it is probably in the area of about 10
17    witnesses, 10 to 15 witnesses.  I would expect the
18    Government's evidence to take approximately two and a half
19    to three days.
20            THE COURT:  Thank you.  Mr. Marston?
21            MR. MARSTON:  Yes, I would expect, though
22    certainly not establish there would be a defense case for
23    Mr. Williams, I think it would make sense to plan on a half
24    day or a day for that, in addition to the Government's
25    evidence.  It sounds like three or four days for trial.

1               THE COURT:  Mr. Ohm, do you have a view?

2               MR. OHM:  Your Honor saw most of the evidence that

3   would come in on this case.  Other than that there is DNA

4   evidence that implicates Mr. Williams.  So I think there is

5   probably some overlap there.  I look at this case and think

6   it is a day and a half at the most.  I will not add to that

7   number very much.  At the most it would be two more hours

8   from us.

9               THE COURT:  I think the question for you,

10  Ms. Lesley, is whether you have a sense when a one-week

11  trial could get calendared in light of all of the various

12  other competing demands from other judges and the current

13  setup of how we are going to be doing trials in the near

14  future or if we would need to to do a little bit of analysis

15  perhaps and come back in a few days to have a discussion.

16              COURTROOM DEPUTY:  Well, the schedule as-is I

17  wouldn't even say it is the most accurate because there are

18  still jury trials that are scheduled based off of the order

19  prior to Chief Judge Howell saying that only one trial could

20  be done every two weeks.  So there are multiple trials

21  scheduled within one week currently on this calendar.

22              But if we go by what is here, it looks like the

23  next time -- the earliest we could schedule a trial, based

24  off of what is here now, is April 12th or the beginning May

25  31st.  Again, that is not the most accurate because there

1       are multiple trials that are scheduled that have not been

2       spaced out based off of the newest or updated order from

3       Chief Judge Howell.

4               THE COURT:  I think what is going on is that some

5       trials are on the calendar but have not been taken off or

6       shifted, just based on some internal discussions I have been

7       privy to.  I take it what you are saying, Ms. Lesley, is

8       complying fully with the standing orders from Chief Judge

9       Howell, this trial could still occur either April 12th or

10      May 31st.  Am I right about that?

11              COURTROOM DEPUTY:  Correct.  It is spacing it in

12      between the trials that are on the calendar.

13              THE COURT:  So what do the parties have to say

14      about calendaring this for -- and I should say that April

15      12th is actually in the scheme of things quite early

16      because, obviously, individual judges can, I think, under

17      the standing order decide to go more quickly.

18              Chief Judge Howell's standing order certainly

19      strongly presume that there wouldn't be any jury trials

20      happening before the middle of March.  So April 12th is

21      relatively soon in the scheme of things.  Having said all of

22      that, what is the parties' view about an April 12 or May

23      31st trial date?

24              MR. WASSERMAN:  Your Honor, this is Steven

25      Wasserman.  Either one of those is fine.  This case is

1  actually going to be reassigned to another AUSA who will end
2  up trying the case.  I don't have that person's name yet.
3  So at this point I am not aware of any reason on behalf of
4  the Government that either one of those dates is a problem.
5           THE COURT:  Thank you.  Mr. Marston?
6           MR. MARSTON:  Either of those dates would work.  I
7  think the preference would be for the earlier date, I'm
8  sure.  I can't speak for Mr. Douglas, but I'm sure he would
9  like to proceed more quickly.  But I believe Mr. Williams
10 would as well.
11          THE COURT:  Thank you.  Mr. Ohm?
12          MR. OHM:  Yes, Your Honor.  Thank you.
13          Mr. Douglas would like the April 12th trial date.
14 I know in the grand scheme of things with the pandemic, it
15 has been almost a year since Mr. Douglas has been arrested
16 and in custody.  And because of the way the Parole Board
17 does things, he is not collecting any time on his parole
18 case.  Even given all of those things, he has been detained
19 two weeks short of a year, we would ask for the earlier
20 trial date.
21          THE COURT:  In light of what Ms. Lesley said and
22 certainly I recognize all of those considerations, Mr. Ohm.
23 Let's set this matter for trial on April 12th.  There will
24 be a number of lodgistcal issues we will have to work
25 through.  Things are evolving.  There is no question that

1  jury selection will have to occur in the ceremonial
2  courtroom, and because it is a multi-Defendant case it may
3  be that the trial will be held in the ceremonial courtroom
4  as well, but those are all matters that can be ironed out
5  between now and then.  I think everyone will have to remain
6  as flexible as possible to deal with the evolving pandemic.
7         Are there other issues the parties would like to
8  discuss today?  I think we need to do some further work on
9  just the logistics around multi-Defendant case being tried
10 in light of Chief Judge Howell's standing orders, but now
11 that we have a trial date, we will be working toward it.
12 What if any other issues should we discuss today?
13         MR. WASSERMAN:  I'm sorry, go ahead Mr. Ohm.
14         MR. OHM:  I am just -- [Inaudible].
15         THE COURT:  I apologize, Mr. Ohm.  I didn't catch
16 that.
17         MR. OHM:  I wanted to put on the Court's
18 wavelength before the trial that Mr. Douglas is going to
19 need a haircut to go in front of the jury.  I only bring
20 this up now because the other times we thought we were going
21 to do trial and we were just about a week before it there
22 has been logistics from the jail.  I don't think there is
23 any mechanism in place right now that the jail has.  It sort
24 of falls under the category of things that the jail wouldn't
25 be thinking about, but we would need to insist upon.  I

1  thought it would be wise to bring it up as early as
2  possible.  We need Mr. Douglas presentable in front of the
3  jury so that the jury doesn't know what his detention status
4  is.
5          THE COURT:  That seems completely appropriate to
6  me and I'd be happy to enter an order, if necessary,
7  permitting that or requiring that.
8          MR. OHM:  Thank you, Your Honor.
9          THE COURT:  Of course.  Mr. Wasserman, you were
10 going to jump in?
11         MR. WASSERMAN:  Yes, Your Honor.  This is Steven
12 Wasserman.
13         I assume the Court will issue a scheduling order
14 with respect to any voir dire or proposed voir dire and
15 joint pre-trial statement and *Jencks* scheduling.
16         THE COURT:  Yes.  Yes, we will work through all of
17 that, of course, and we will be entering an order, now that
18 we have date and pre-trial dates.  I don't know if there
19 were unique or specific issues that the parties need to
20 discuss today.
21         MR. WASSERMAN:  I can't think of anything from the
22 Government, Your Honor.
23         THE COURT:  Obviously, we have Mr. Ohm's question.
24 Mr. Marston, anything specific we should be considering
25 between now and April 12th?

1     MR. MARSTON:  Nothing specific for Mr. Williams.
2     THE COURT:  Okay.  Thank you.
3     With that, we will do inquiries on our end about
4  the logistics, at least as they exist now, how it relates to
5  multi-Defendant trial.  If the parties haven't done so it
6  would be important to read Chief Judge Howell's most recent
7  set of standing orders that provide at least some framework,
8  I think, for how this trial will go, at least logistically.
9     We will be entering, obviously, a series of orders
10 with respect to pre-trial matters and hopefully with the
11 vaccine and other issues, we will be able to conduct this
12 trial on April 12th and we won't have any problem getting it
13 done.  Of course, as I mentioned already, I think everyone
14 has to remain as flexible as possible in light of the
15 changing circumstances.
16    Are there any other matters we should discuss this
17 morning, Counsel?
18    MR. WASSERMAN:  Nothing for the Government, Your
19 Honor.
20    MR. MARSTON:  Nothing for Mr. Williams.
21    MR. OHM:  Nothing for Mr. Douglas, Your Honor.
22    THE COURT:  Thank you, Counsel.  We will see you
23 in the lead-up to trial on April 12th.
24    MR. WASSERMAN:  Thank you.
25    MR. MARSTON:  Thank you, Your Honor.

1           MR. OHM:  Thank you, Your Honor.
2              (Proceedings concluded at 10:40 a.m.)
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**C E R T I F I C A T E**

I, **Lorraine T. Herman, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

**Please Note:** This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

____**July 15, 2021**____          ___/s/_____
      **DATE**                                    **Lorraine T. Herman**