```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                      FOR THE DISTRICT OF COLUMBIA

 3
     UNITED STATES OF AMERICA,
 4                                              CR Action
                  Plaintiff,                    No. 1:20-121
 5
          vs.                                   Washington, DC
 6                                              March 1, 2021
     TAVONTE WILLIAMS AND
 7   THEODORE B. DOUGLAS                        10:30 a.m.
                  Defendants.
 8   _____/

 9
                 TRANSCRIPT OF TELEPHONE STATUS CONFERENCE
10             BEFORE THE HONORABLE CARL J. NICHOLS
                     UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:     STEVEN B. WASSERMAN
                              U.S. ATTORNEY'S OFFICE FOR D.C.
14                            555 Fourth Street, NW
                              Washington, DC 20530
15                            (202) 252-7719

16   For T. Williams:      JOHN PETER MARSTON
                             FOLEY HOAG, LLP
17                           1717 K Street, NW
                             Washington, DC 20006
18                           (202) 261-7321

19
     For T. Douglas:       EUGENE OHM
20                           FEDERAL PUBLIC DEFENDER FOR D.C.
                             625 Indiana Avenue, NW, Suite 550
21                           Washington, DC 20004
                             (202) 208-7500
22

23   Reported By:     LORRAINE T. HERMAN, RPR, CRC
                      Official Court Reporter
24                    U.S. District & Bankruptcy Courts
                      333 Constitution Avenue, NW
25                    Room 6720
                      Washington, DC 20001
```

**P R O C E E D I N G S**

1
2  COURTROOM DEPUTY: Good morning, this is criminal
3  case year 2020-121 United States of America versus Tavonte
4  Williams, Defendant number 1 and Theodore B. Douglas
5  Defendant number 2, both who are present on the phone.
6       Counsel, please introduce yourselves for the
7  record, beginning with the Government.
8       MR. WASSERMAN: Good morning, Your Honor. Steven
9  Wasserman on behalf of the United States.
10      THE COURT: Good morning, Mr. Wasserman.
11      MR. MARSTON: Good morning, John Marston for
12 Tavonte Williams.
13      THE COURT: Good morning, Mr. Marston.
14      MR. OHM: Eugene Ohm on behalf of Theodore B.
15 Douglas.
16      THE COURT: Good morning, Mr. Ohm.
17      Here is why I scheduled this status conference,
18 under the current COVID-related standing order issued by
19 Chief Judge Howell, all trials in our court are suspended
20 through March 15th. And as you can imagine there has been a
21 lot of discussion about whether and how we could resume
22 trials after that date.
23      I think it's likely -- this has not been
24 finalized, but I do think it is likely that trials will, in
25 fact, resume after March 15th, but they are going to be

1   resumed in a highly-coordinatated manner that will involve,
2   among other things -- and this is all still to be finalized,
3   but I think it is relevant for this case, and I want to make
4   sure that people understand the context -- that first of --
5   will likely be held exclusively or at least almost
6   exclusively in the ceremonial courtroom and other areas of
7   the sixth floor, which obviously ends up affecting how many
8   juries can be selected at the same time; that's the first
9   thing.
10          The second thing is multi-Defendant cases like
11  this one will very likely be conducted, the trial itself
12  will be conducted in the ceremonial courtroom, which is
13  obviously where we were for the pre-trial motions hearing we
14  had several months ago.  And there are, in terms of sifting
15  through the various cases and, of course, there are many
16  cases that would have gone to trial already and they are
17  awaiting trial, the Court has tried to prioritize starting
18  with the most discreet cases, almost as test cases, that
19  involve detained defendants, especially those defendants who
20  have been detained the longest to do those as early as
21  possible and essentially get some of those early test cases,
22  in effect, under our belts.
23          The calendar committee, Chief Judge Howell, Judge
24  Contreras and others have worked to put together,
25  essentially, a coordinated schedule for all of the different

1   cases that we have to deal with.

2              Under the current one, the current notional,
3   internal schedule for all of these cases, this matter, the
4   one we are talking about today, has been pushed back a few
5   weeks, but just a few weeks, to start on May 3rd.
6   Obviously, it was set to go on April 12th, but that is just
7   a few weeks after jury trials will resume, and I think it is
8   fair to say there are other cases that are single-Defendant,
9   more discreet and/or have defendants who have been detained
10  even longer than we have in this case.

11             So I think it is fair to say that things are still
12  a moving target.  There's even discussion about whether
13  March 15th is an appropriate date to resume.  I think it is
14  likely to hold, but the schedule and how these cases all fit
15  together is obviously pretty complex, even dependent upon
16  whether cases plead out or I suppose whether there are cases
17  that need to jump earlier in the queue than they would
18  otherwise be.

19             I do think it is fair to say, though, that because
20  this is a multi-Defendant case and the Court is blocking the
21  week of May 3rd for this case to happen in the ceremonial
22  courtroom, including voir dire and the like, that it's not
23  going to go earlier, that's for sure.  And there's, I
24  suppose, a risk that if May 3rd is not a great date for
25  whatever reason that it could slip farther.

1          So having said all of that, the purpose of this
2     call is to inform the parties of where things stand with
3     respect to the trial date that's currently on the calendar
4     to see whether a May 3rd trial date is feasible for the
5     parties.  It's available for me.  I've got it blocked off
6     but, of course, I recognize we have to have lawyers,
7     witnesses and parties available.  And then assuming it is or
8     if it might be but people need to go check, then we can
9     start setting up all of the other dates that need to be
10    aligned before we get to May 3rd.
11         So, Mr. Wasserman -- and I'll just go counsel by
12    counsel -- I understand that this may be taking everybody by
13    surprise, so to speak, but I will just go counsel to
14    counsel.  Do you have any reactions?  Can the Government do
15    a May 3rd trial?  What are your views or what are your
16    reactions?
17         MR. WASSERMAN:  Your Honor, again, this is Steven
18    Wasserman.  I appreciate the Court's update.  As far as the
19    status goes, I can provide, I guess, the following
20    information as I understand it right now is.  I believe the
21    Government has a plea agreement in principle with Theodore
22    B. Douglas.  I provided the paperwork via Mr. Ohm.  Barring
23    any unforeseen issues, I expect that part of the case to
24    dispose of itself hopefully within the next week or two.
25         If that happens, that would leave us with Mr.

1     Williams, who is not detained.
2             THE COURT:  Correct.
3             MR. WASSERMAN:  I don't know where that would put
4     us in the queue as far as trial dates, if that happens,
5     whether that would push us back or what.
6             As far as the May 3rd date, it's likely somebody
7     other than me is going to actually trying this case so I'd
8     have to check as far as scheduling -- I am not aware of any
9     issue for May 3rd, but I don't actually have another
10    attorney assigned to this matter just yet.  So I can either,
11    you know, go on the assumption that May 3rd would be fine
12    that they would find an AUSA that is available that date or,
13    you know, check with supervisors to see, you know, if
14    there's some specific person that would be available to do a
15    trial that day.
16            THE COURT:  Mr. Wasserman, I don't think you need
17    to do that yet and here's why.  Of course, I want to hear
18    from Mr. Ohm about Mr. Douglas' situation and from Mr.
19    Marston.
20            If Mr. Douglas does enter a guilty plea, it makes
21    it easier, perhaps, to do earlier or to hold May 3rd or
22    sometime around there because it becomes a single-Defendant
23    case and can very likely be conducted in a courtroom other
24    than the ceremonial courtroom, at least for everything other
25    than voir dire.  It makes it easier some in some ways to

1       calendar.

2               On the other hand, I think the Court will view it
3       as less of a priority because then, obviously, we are
4       talking about someone who has been released pre-trial and
5       that will likely put some pressure on it to slip behind
6       cases where that's not the case.

7               And so if, as a result of this conference today,
8       it looks likely that Mr. Douglas is going to plead guilty
9       and, in fact, perhaps if we set a plea hearing, then I think
10      what we will need to do is go back to the calendar committee
11      with the new information that this is likely to be a
12      single-Defendant trial for a Defendant who is not detained.
13      We certainly can push for a particular date and to go
14      quickly depending on what Mr. Marston has to say about that.
15      But I think we should not assume that May 3rd will be the
16      date.  I don't think you need to go looking for someone who
17      would be taking over this case to see if they are available
18      on May 3rd because there are enough moving pieces here that
19      May 3rd may very well not be the relevant date.  I just
20      don't know what the alternative will be.

21              MR. WASSERMAN:  Okay.

22              THE COURT:  I cut you off.  I don't know if you
23      had anything else to add or if we should turn perhaps to
24      Mr. Ohm and then to Mr. Marston.

25              MR. WASSERMAN:  I don't have anything else, Your

1       Honor.

2               THE COURT:  Okay.  Thank you.

3               Mr. Ohm, you heard what Mr. Wasserman said about

4       Mr. Douglas' situation.  Do you think it's likely we are

5       going to have a plea here, in which case, at least for

6       planning purposes, I should be thinking of this as a

7       single-Defendant matter?

8               MR. OHM:  Yes, Your Honor.  I received the

9       paperwork this morning.  My intention was to review it with

10      Mr. Douglas by video on Thursday.  Hopefully I can get in

11      for a video visit, and then I will have the paperwork signed

12      and returned to chambers hopefully by the end of the week.

13              THE COURT:  Okay.  Thank you.

14              MR. OHM:  One thing I want to add before Mr.

15      Marston goes.  Based upon the possibility of Mr. Douglas

16      testifying on behalf of Mr. Williams, should he decide to do

17      that, it's going to be our position that he have fifth

18      amendment right until sentencing.  To the extent the Court

19      is figuring out scheduling, I just wanted to throw that out

20      there.

21              THE COURT:  Thank you.  Yes.  Understood.  It is a

22      thought I had as well.  Mr. Marston?

23              MR. MARSTON:  Yes, thank you, Your Honor.

24              I think I would have to talk to my client.  There

25      are several moving pieces in play, it seems to me.  I am

1  available May 3rd.  I don't think in light of the plea

2  timing that, you know, this will drive the case in many

3  different directions potentially.  I don't know that we

4  could be ready earlier.  I will have to see if my client

5  wants to push for an earlier -- you know, the earliest

6  possible date, that's been our position in the past, I

7  think.

8  But also, in light of the potential plea, the

9  potential post-sentencing testimony of the co-defendant, I

10  think there is a great likelihood we would rather wait for a

11  later time that works better for the Court and for our

12  potential witnesses.

13  THE COURT:  Why don't we do the following.  Just

14  for people's awareness, on the notional trial calendar that

15  we are discussing internally, it does have open dates after

16  May 3rd but not, you know, not months later.  But end of

17  May, they are largely trying to do these things where we

18  have a Monday voir dire for one case in the ceremonial

19  courtroom and then a Tuesday one and potentially another

20  Wednesday one.

21  So, for example, the date around May 31st appears

22  available.  There's a week there available next week, the

23  June 7th week, June 28th.  So it's not as if May 3rd ends up

24  not working that it suddenly has to shift necessarily four

25  or five months.  I think there's a possibility that we can

1      fit something in if we decide to go that course, it would
2      only be a few weeks after the 3rd.
3               As for before the 3rd, if that was for whatever
4      reason something the folks would want, that seems harder to
5      me, if possible.  And I'm saying harder in the sense of
6      coordinating with all of the other cases just because that's
7      relatively soon and there is the interest in trying to do
8      just a few cases early on with the detained Defendant.  And
9      I'm just not sure whether Mr. Williams -- the Court would
10     view Mr. Williams' case as one that should go early.
11              Having said all of that, I think the following
12     makes sense, but I am happy to hear from everyone, if you
13     don't think so.  Obviously, the guilty plea here --
14     potential guilty plea, will have a potential effect on this
15     case in a number of different ways.  Obviously, it makes the
16     case a single-Defendant case, as we've been talking about,
17     non-detained, for all of the COVID-related scheduling
18     reasons.  There is also the question of Mr. Douglas'
19     testimony that everyone has raised.  It sounds at least
20     possible that we will have an executed guilty plea and
21     paperwork this week.
22              I think probably the most prudent course is to
23     allow that to happen this week.  Hopefully it does or if it
24     doesn't, it is what it is.  And then to get on the phone
25     next week and discuss the implications, if there is one, or

1     if for whatever reason there isn't one, and to just at least
2     understand where things stand.
3            So my thought is to do a call on March 9th or
4     10th.  If the paperwork is received on the 5th, that gives
5     everyone a few days to digest it and think about how it
6     effects the case and the scheduling and the like.  It also
7     allows for a few more days in case the paperwork isn't
8     executed on the 4th for it to possibly be worked through on
9     the 10th or 9th.  At least we can be discussing next steps
10    in light of what seems to be a likely next event.
11           Does that work for everyone at least notionally
12    and then we can talk about specific timing?
13           MR. WASSERMAN:  Your Honor, this is Steve
14    Wasserman.  Just so we are clear, you are anticipating
15    having another call concerning scheduling prior to, actually
16    taking Mr. Douglas' plea?
17           THE COURT:  Yes.  Yes.  I mean, I suppose I could
18    combine those things, but what I wanted to make sure we
19    scheduled today was a call post the plea, assuming it is
20    going to happen, or post the date where we think there is
21    going to be an executed plea document where we can talk
22    through the implication for the case generally.  If you
23    think it makes sense to just do the plea at the same time,
24    that's fine with me.
25           My main concern is that we not lose time in

1      thinking about the ark of the case generally, such that

2      spaces start filling up in this overall trial schedule.

3              If we have an executed plea agreement, we can take

4      the plea on the 9th or 10th or we can also wait.  I am

5      concerned about talking about how this case is affected by

6      the plea agreement as soon as possible, so that if it's

7      decided, for example, that, you know, Mr. Marston wants a

8      few extra weeks beyond May 3rd, but not much longer, I can

9      go back and reserve a spot for late May or early June.

10     Because I am concerned if we don't do that quickly, those

11     spots are going to start filling up.  That's what I had in

12     mind.  But if the parties think that we can combine that

13     discussion and the taking of the plea together, that is just

14     fine by me as well.

15             MR. WASSERMAN:  As far as the Government's

16     concerned, I am happy to do it either way.  You know, if the

17     plea paperwork is executed on Friday or Monday, you know, I

18     am either happy to do the plea on the same day as the call

19     or if it's easier to do it afterwards.  If the plea

20     paperwork is executed then, you know, it would appear

21     likely, you know, that the plea will actually go through.

22             So I am flexible if Mr. Ohm wants to do it the

23     same day as the 9th.  I am available the 9th, next week.  I

24     don't have anything else scheduled that day.  I can do a

25     call for a plea and status, if that's how the parties want

1    to proceed.

2             THE COURT:  Mr. Ohm, do you have a view?

3             MR. OHM:  My only reluctance is the jail in terms

4    of short turnaround time.  My intention is to get the

5    paperwork back to the Court by Friday, and I will -- once I

6    get that, I think we will be ready to go for any time next

7    week.

8             I guess we could set it that way, and if I don't

9    have the paperwork back, I can let the Court know at the

10   hearing and we can reset another plea date.

11            THE COURT:  All right.  Counsel, I will be back

12   with you in one second.

13            (Break.)

14            THE COURT:  Mr. Marston, what about the following

15   and, I guess, everyone, what if we were to set this matter

16   over for two purposes on March 10th at 3:00 p.m. or sometime

17   in the afternoon that is available for everyone, where we

18   take up both Mr. Douglas' potential guilty plea and the

19   question of the overall scheduling of the case depending on

20   where we are.

21            Obviously, if for whatever reason the paperwork

22   isn't completed or something else has to happen with the

23   plea and we can't do the plea that day, that's okay, we will

24   talk about the schedule, assuming that we have enough

25   concrete information about the plea to proceed.  Does that

1     work for you, Mr. Marston, and everyone else?
2               MR. MARSTON:  This is Mr. Marston.  Yes, Your
3     Honor, that sounds great.
4               THE COURT:  Okay.  Mr. Wasserman, is that okay?
5               MR. WASSERMAN:  Yes, Your Honor.
6               THE COURT:  Mr. Ohm?
7               MR. OHM:  Yes.
8               THE COURT:  Is 3:00 p.m. acceptable to everyone?
9               MR. WASSERMAN:  Fine for the Government.
10              MR. MARSTON:  It's good for Mr. Williams.
11              MR. OHM:  It's good for Theodore B. Douglas as
12    long as the jail is available and the Court is allowing us
13    to do it by video.
14              THE COURT:  So, first I do think it's appropriate
15    to proceed here by video.  First, I guess we need to confirm
16    that 3:00 p.m. is available from the jail.  Ms. Lesley, I
17    don't know if you have that calendar available?
18              COURTROOM DEPUTY:  I am looking right now, Judge.
19    Give me one moment.  At this moment 3:00 is not available on
20    the 10th.  However, there is a hearing scheduled for, I
21    guess it might be tentatively scheduled before another judge
22    it has a question mark.  I have to check with my supervisor
23    to find out whether or not that is solidified.
24              THE COURT:  Ms. Lesley, is there another time on
25    the 10th that is available?

1           COURTROOM DEPUTY:  Hold on.  There are four rooms.
2    I have to check.  Give me one second to look at all four
3    rooms.  As of right now it looks like 9:00 on the 10th is
4    available.
5           MR. OHM:  Your Honor, I have an in-person
6    suppression hearing at 9:30.  I don't think I can do that.
7           COURTROOM DEPUTY:  It's hard to schedule so soon
8    to the date.
9           THE COURT:  Why don't we do the following.  I
10   think this is probably the most efficient way to proceed.
11   My intent is to have a hearing next week on the 10th or the
12   11th, somewhere around there, where we both take Mr.
13   Douglas' plea by video and discuss next steps and
14   scheduling.
15          Why don't we have Ms. Lesley work with the jail
16   just to see what time would be available, and then she can
17   communicate with counsel about what time makes sense.  See
18   if everyone is available.  And then we'll just do it then,
19   unless, Ms. Lesley, you already have a potential alternative
20   time right now?
21          COURTROOM DEPUTY:  No, Your Honor.  But I will
22   definitely reach out as soon as this call is over to find
23   out.  I see another time that has question marks next to it.
24   So there are two -- let me tell you what that time is.  So
25   there are two questionable 2:00 availabilities.  I will have

1  to reach out to my supervisor to see the status on those.
2  They are tentatively scheduled before other judges, but
3  there are question marks.  So I have to find out.
4           THE COURT:  There is nothing magic to the 10th.
5  It could be the 9th or the 11th.  So that's what we will do,
6  Counsel.  We will hold the hearing next week to deal with
7  those two separate but obviously realted topics.  It will be
8  by video for purposes of taking the plea, and we will just
9  stay on the video for the rest of the discussion.
10          Ms. Lesley will be in touch with you directly
11 about the scheduling possibilities based on what she learns
12 from the jail, and then once we land on a time and day, we
13 will enter an order to that effect.
14          Assuming that makes sense, is there anything else
15 we should talk about this morning, Counsel?  Mr. Wasserman?
16          MR. WASSERMAN:  Nothing for the Government, Your
17 Honor.
18          THE COURT:  Thank you.  Mr. Ohm?
19          MR. OHM:  No, Your Honor.
20          THE COURT:  Mr. Marston?
21          MR. MARSTON:  No, Your Honor.
22          THE COURT:  Okay.  Thank you all.  We will speak
23 next week.
24          MR. WASSERMAN:  Thank you, Your Honor.
25          MR. MARSTON:  Thank you.

1           (Proceedings concluded at 11:00 a.m.)

**C E R T I F I C A T E**

I, **Lorraine T. Herman, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

**Please Note:** This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

\_\_\_\_\_**July 15, 2021**_____     \_\_\_**/s/**_____
           **DATE**                        **Lorraine T. Herman**